39 N.J. Super. 140 (1956)
120 A.2d 650
MARY LOU DIGLIO, AN INFANT BY HER GUARDIAN AD LITEM, ADELINE DIGLIO AND ADELINE DIGLIO, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 1956.
Decided February 14, 1956.
Before Judges CLAPP, JAYNE and FRANCIS.
*141 Mr. Cyril J. Galvin for the appellant (Messrs. Townsend & Doyle, attorneys).
Mr. Thomas J. Baldino, Jr., for the respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
Although the modern inclinations of teenagers and adults have become somewhat unpredictable, the natural propensities of children of tender years continue to be reasonably foreseeable. Their instincts have been too repeatedly observed over the ages to elude common knowledge. Their responsiveness to allurement has existed before the day of the Trojan horse; their proclivity to climb is old enough to have been a contributive factor to the conception of the Darwinian theory; and, as Lord Sumner put it, they are little barbarians who in the wantonness of infancy are prone to trespass. Those incarnations of childhood circulated in the infant plaintiff in the present action at the age of nine.
For a span of years preceding the occurrence of the unfortunate mishap to which the present case relates, the defendant company has been the owner and occupier of a parcel of land in the Borough of Allenhurst, Monmouth County, which it has utilized in the pursuit of its business for garage and storage purposes. Along the boundary line of the property the defendant erected a relatively high fence, the characteristics of which at the scene of the accident are vividly portrayed by the photographic exhibits thereof.
The fence, spoken of as a cyclone fence, is itself composed of interwoven sturdy wire in a frame of iron pipes or rods, with sharp pointed ends of wire projecting upward from the top. Particularly noticeable in the exhibits is the horizontal suspension above those spikes of three separated strands of barbed wire. One's attention soon concentrates on the observance in the photographs that the extension of the fence is interrupted at points where poles rise perpendicularly from the ground, to which poles the fence is attached by iron bars. Significantly, those bars are so horizontally placed across the poles at such successively elevated locations *142 thereon as to "form a pattern similar to a ladder up the side of the pole."
The fence was obviously dangerous to climb over and probably made so intentionally to prevent thieves, prowlers, or other ill-intentioned persons from entering the defendant's property.
Notwithstanding the threatening composition of the fence, the judicially authenticated statement of facts informs us that:
"The proof at the trial discloses that this fence has circumscribed the defendant's property for many years and that during all of those years the children have been permitted to play in and about the defendant's property, apparently at will and without molestation or restriction. The permissive activities of the children included using the wall of the defendant's building located within the fenced area for handball purposes, playing otherwise in and on the property within the fenced area, climbing and playing upon the cement wall which is constructed as a base below the fence in question and climbing over the fence. The uncontradicted testimony disclosed that these play activities were engaged in while employees of the defendant-company were present and even while the manager was present, and that during all of that time the children had never been chased therefrom."
On December 28, 1953 the infant plaintiff while at play was climbing up the fence on the horizontal bars, slipped, and in an impulsive endeavor to spare herself from falling, grasped one of the wires at a point where it was sharply barbed, and a gash requiring 16 sutures to close was torn in the palm of her hand.
The judge of the Monmouth County District Court resolved that in the circumstances the defendant was legally responsible for the injurious consequences of the mishap, and awarded compensatory damages to the infant plaintiff in the sum of $750 and to her mother in the amount of $107 disbursed by her for medical attendance. At the trial the defendant, after unsuccessfully moving for a dismissal of the alleged cause of action, rested without introducing any evidence in contradiction of the asserted facts. It is at the request of the defendant that we review the legal and factual propriety of the judgment.
*143 The law appropriately to be applied to the occurrence of such injurious accidents suffered by trespassing infants in relation to the liability of the owner or occupier of the land has been a subject of acute discussion, judicial and otherwise, ever since the rendition of the decision of the United States Supreme Court in the so-called "turntable case," entitled Sioux City & P.R. Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745, in 1873.
Its publication, although apparently causing little consternation at the time, may be said to have eventually initiated a siege upon the protective fortifications of early common-law principles theretofore deemed available to landowners against liability to intruders. Over the ensuing years the siege has been persistently waged and resisted with both rationalistic and revolutionary conflict. Social engineering has served materially. The Restatement of Torts, § 339, has been influential.
The subject of discordancy bore the name "turntable doctrine," its descendants have been called "attractive nuisance doctrine," "playground doctrine," "infant trespasser doctrine," and sometimes the "dangerous instrumentality doctrine." The principal essentialities, vel non, of the doctrine upon which the jurists and commentators have lavished their studious considerations have been the characteristics of "allurement," "attractiveness," or "visibility" of the object or condition; its "dangerous nature"; the implied "invitee, licensee or trespasser status" of the injured; the "foreseeability of danger"; the "knowledge or notice of the presence of children" and the superior regard for the "value of child life" from a present sociological point of view.
Because nowhere in any of our jurisdictions is the possessor of land an absolute insurer of the safety of trespassing children, it has been necessary to cultivate in the fertile field of the law of negligence a duty of reasonable care in certain instances effectuated by proof of the failure of the possessor of the land to fulfill that exceptional obligation toward intruding youths of tender years.
*144 Just as years separated the decision in the Stout case, supra, from those in Union Pac. Ry. Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434 (1893) and in United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1922), so, in our own State jurisdiction the observations of time and experience have detached in rationale respecting trespassing infants our decisions in Vanderbeck v. Hendry, 34 N.J.L. 467 (Sup. Ct. 1871); Turess v. New York, Susquehanna & Western R. Co., 61 N.J.L. 314 (Sup. Ct. 1898); Fitzpatrick v. Cumberland Glass Mfg. Co., 61 N.J.L. 378 (Sup. Ct. 1898); Delaware, L. & W.R. Co. v. Reich, 61 N.J.L. 635 (E. & A. 1898); Friedman v. Snare & Triest Co., 71 N.J.L. 605 (E. & A. 1905); Tarlucki v. West Jersey, etc., R. Co., 80 N.J.L. 688 (Sup. Ct. 1910), from those recently rendered in Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); Cole v. Thompson, 27 N.J. Super. 561 (App. Div. 1953), certification denied 14 N.J. 465 (1954); and see Hoff v. Natural Refining Products Co., 38 N.J. Super. 222 (App. Div. 1955), in which Judge Conford discusses the materiality of the infant's age.
Intervening decisions of interest are Piraccini v. Director General of Railroads, 95 N.J.L. 114 (E. & A. 1920), and Spenzierato v. Our Lady Monte, etc., East Orange, 112 N.J.L. 93 (E. & A. 1934).
The courts of our State have not in the past been inattentive to the maxim sic utere tuo ut alienum non laedas, in the operation and maintenance of highly dangerous instrumentalities. Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890). However, in the infant trespasser cases the dangerous nature of the condition and its attractiveness to children were deemed to be immaterial circumstances. Vide, Kaproli v. Central R.R. of New Jersey, 105 N.J.L. 225 (E. & A. 1928).
Here and in many jurisdictions the concept that no duty of care other than to refrain from willful and wanton injury toward trespassers continued to be impregnable. Attraction *145 or temptation to children was not regarded as the equivalent in law of invitation. Friedman v. Snare & Triest Co., supra. The emigration into our jurisprudence of another breed of trespassers to be known as "tolerated intruders" was not welcomed here, although such fictions are sometimes benign in periods of a transition in the practical applications of law to modern needs.
And so, the battle continued at the heavy gates which for centuries have protected the traditional immunities of the possessors of land until the forces of the Restatement of the Law of Torts came to strengthen the cause of the attractive nuisance doctrine. See, historically, 11 Harv. L. Rev. 349 (1898); 36 Harv. L. Rev. 826 (1923); 21 Mich. L. Rev. 495 (1923); 27 Tex. L. Rev. 1 (1948); 41 Cal. L. Rev. 139 (1953); 63 Yale L.J. 161 (1953); 8 Rutgers L. Rev. 378 (1954). Recent texts, see, Prosser, Torts (2d ed. 1955), p. 438; Stevenson, Negligence, p. 661 (1954).
It is now manifest that the pragmatical utility of the fundamental principles of the doctrine in the protection of humanity is overriding its inherent theoretical legalistic infirmities and inconsistencies. Inspect, Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955). We must therefore reduce the precedential impressiveness of the earlier decisions of former pertinency and application. We shall not pause to debate the assertion that our present Supreme Court has upon mature consideration erroneously engrafted on the law of negligence a duty of care on the part of an occupier of land theretofore non-existent. Judicial decisions must always have a forward as well as a backward look.
Preliminarily, let us expel the inference that our present Supreme Court by its recent decisions intended to place upon the possessor or occupier of land the inevitable duty of a positive insurer of the safety of trespassing children. Not so. The circumstances of the individual case are of pivotal significance, and the determination of the basic facts, particularly where controverted by the evidence, may be necessarily entrusted to the jury. Cf. Harris v. Mentes-Williams Co., Inc., supra.
*146 Although we have no authorization so to declare, it would now appear that our present decisional law of negligence in this particular accommodates itself in a substantial alliance with § 339 of the Restatement of the Law of Torts.
Our Supreme Court has announced:
"And the general rule of liability covers in particular trespassing children of tender years who because of immaturity are wanting in the discretion and judgment essential to their own security. Where trespass upon the land is foreseeable, and the condition involves an unreasonable risk of death or serious bodily injury to the trespassing child, the possessor of the land is liable. Restatement of Torts, section 339. Habitual acquiescence in trespasses may well constitute license. * * * Human safety is of far greater concern than unrestricted freedom in the use of land."
Strang v. South Jersey Broadcasting Co., supra, 9 N.J., at p. 45.
Certainly the injurious condition or object must be shown to be of so dangerous a nature as likely to produce serious bodily harm. The adjective "dangerous" has its legally appropriate association to the foreseeability of harm  and then also the question, foreseeably dangerous to whom, adults, or young children, as the case may be? Vide, Terranella v. Union Bldg. and Construction Co., 3 N.J. 443, at p. 449 (1950).
The consideration of the alluring and attractive characteristics, if any, of the condition or object has now been largely attached to the concept of foreseeability of harm. For example, should it not be reasonably anticipated that children will probably climb up a pole which has conspicuously attached to it cross bars in the fashion of a ladder? Consult, Clark v. Pacific Gas & Electric Co., 118 Cal. App. 344, 5 P.2d 58, 6 P.2d 297 (Ct. App. 1931), hearing denied, Sup. Ct. 1932; Brown v. Southern California Edison Co., 120 Cal. App. 102, 7 P.2d 770 (D. Ct. App. 1932), hearing denied, Sup. Ct. 1932.
True, a static fence would not ordinarily be catalogued as a dangerous agency or instrumentality, but assuredly it can be made so. In the present case the fence was intentionally *147 and purposefully made hazardous for anyone to attempt to scale, and moreover it was continued to be so maintained notwithstanding knowledge of the freely manifested propensities of children to climb upon it.
Here, the utility of the dangerous fence to the defendant was slight in contrast with the foreseeable risk to the children. The defendant could have terminated the permissible use of its property as a playground; it could have forbidden the children to climb the fence and warned them in some manner of its hazardous features; it could have in the circumstances removed the sharp spikes from the top of the fence and the strands of barbed wire above them, and pursued any one or all of these safety measures at an inconsiderable expense and evidently with little, if any, abridgment of the business use of its property. The proof in the case sub judice sustains a maintainable cause of action under our present decisional law, and the failure of the defendant to have exercised reasonable care, caution, and prudence to protect the infant plaintiff from her bodily injury is plainly established.
The judgment is affirmed.