FRANK LORUSSO, AN INFANT BY HIS GUARDIAN *AD LITEM*, JOSEPH LORUSSO, AND JOSEPH LORUSSO AND MARGARET LORUSSO, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. DOMINICK DeCARLO, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1957—Decided December 20, 1957.

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. Edward S. Miller* argued the cause for plaintiffs-appellants (*Messrs. Steisel, Rey & Gundersdorf,* attorneys; *Mr. Alfred M. James,* of counsel; *Mr. Aaron Dines,* on the brief).

*Mr. Allen C. Mathias* argued the cause for defendant-respondent (*Messrs. Smith, James and Mathias,* attorneys).

The opinion of the court was delivered by

CLAPP, S. J. A. D. This action, sounding in negligence, was dismissed at the close of plaintiffs' case. Plaintiffs appeal.

As in *Simmel v. New Jersey Coop Co.,* 47 *N. J. Super.* 509 (*App. Div.* 1957), we are concerned with an infant plaintiff, four years of age, who was seriously burned by a fire while trespassing on a vacant lot belonging to the defendant. As in *Simmel,* the child and his family lived across the street from the lot, and the fire was the work of a third person, unauthorized by the defendant. In the present case, it may be inferred, the third person was an old man, Joseph Serino, a neighbor, who had been burning newspapers in a wire basket carried by him over to the lot from his home across the street. He then apparently departed from the lot before the accident occurred, leaving the basket behind.

██ The law on this subject has now developed sufficiently so that it may be stated as a general matter that an occupier of land renders himself liable for injuries to children trespassing on the land if an ordinary prudent person in his position would have reason to anticipate the presence of the children and also anticipate that they would be subjected to an unreasonable risk of harm as a result of some condition on the land—at least if the condition is an artificial one. Further see *Simmel v. New Jersey Coop Co., supra; Wytupeck v. Camden,* 25 *N. J.* 450 (1957). Various phases of this proposition will be dealt with below in connection with the relevant circumstances. In relating those circumstances, we of course give the plaintiff the benefit of all inferences fairly deducible from the proofs.

The first question is whether the presence of children on the lot was reasonably foreseeable. In *Harper and James, Torts,* 1451 (1956), it is said:

"\* \* \* there must be the probability that children will be exposed to the danger. This may be shown by evidence of allurement. It may also be shown by evidence of repeated former trespasses, by the proximity of the danger to a highway or to residences, schools, or playgrounds where children are likely to be, by the accessibility of the dangerous condition to children, or by any other evidence having a rational tendency to indicate a likelihood of children's presence in such a way as to bring that fact home to the occupier. Unless plaintiff can, show the likelihood of children's presence where the danger was maintained, he cannot recover under this theory."

*Prosser, Torts* (*2d ed.*), 441, says:

"\* \* \* the presence of young children may be foreseeable on the basis of past trespasses, proximity to places where children are likely to be, \* \* \* or any other evidence which would lead a reasonable man to anticipate the trespass."

The vacant lot, with which we are concerned, is in a somewhat populated community; and in such a community some vacant lots may attract the children of the neighborhood. In any event, there is proof here that during the six months before the accident children played on this lot "quite often" "all day long." There is, to be sure, no direct testimony establishing knowledge of this on the part of the defendant. But he was seen on the lot "quite often \* \* \* at least twice a week." Moreover the lot was used as a parking facility for his tavern. This tavern—he apparently lived in the same building (in any event he lived in the block)— was situated across the street from the lot, and his mother lived on one side of the lot. From these circumstances it seems to us that a jury might properly infer that the lot was within his view very often, and that he could reasonably have foreseen that a child or children would play on it.

 We may summarily dispose of the second question, about which much of the argument in this case has centered. That matter was decided in *Simmel v. New Jersey Coop Co.,*

*supra,* wherein we held that an occupier of land may be
held liable for injuries to trespassing children resulting from
an artificial condition created by a third person (here Serino),
whether or not defendant, by his own act, caused, or acquiesced
in, the condition.

That leaves open for consideration only one other
question, namely, whether the defendant could, in the exer-
cise of ordinary prudence, have anticipated that Serino would
start a fire on the lot which would subject a trespassing
child to an unreasonable risk of harm. We break this ques-
tion up into two parts. First, it may be asked, could he
reasonably have foreseen that Serino would set the fire there?
On one occasion, less than two weeks prior to the accident,
defendant was seen talking to Serino while Serino was
"making fires" on the lot in his wire basket. On two occa-
sions while Serino was attending such a fire, Serino was seen
talking to defendant's mother. Three or four times, during
a period of six months, Mrs. Lorusso, the infant plaintiff's
mother, saw refuse burning in this basket, lit by Serino.
Mr. Lorusso, the father, saw him burning papers there four
or five days before the accident, nobody else being present,
and also saw him there other times "off and on," apparently
burning rubbish in his wire basket. In addition, a police-
man had seen fires on the lot more than once, though he
could not say whether any one was attending them; and
Serino's daughter, who lived with Serino across the street
from the lot, said she never saw anyone make a fire there
before the accident, except her father. It would appear then
that Serino had set fires here a substantial number of times.
Indeed an inference that he made a practice of it, may
possibly be drawn from the fact that he had bought the
basket just to burn papers on this lot and had used it for
no other purpose. It is to be inferred also from the proofs
that defendant never forbade Serino to start a fire there
and never warned him against it (Serino stated, "Nobody
said anything to me about" not starting fires on the lot).
Defendant must therefore have rather openly tolerated such
actions by Serino at the time he stood conversing with the

latter, as above stated. From these circumstances, from the fact that defendant was seen on the lot quite often, from the fact that he was probably within view of it much more often, we think a jury question was presented as to whether he should reasonably have anticipated that Serino would come back to the lot again to burn papers or rubbish there.

The remaining part of the above-stated question is this: could defendant in the exercise of ordinary prudence have anticipated that such a fire would create an unreasonable risk of harm to a child playing on the lot? At the time of the accident Serino had left the lot, and the fire that injured the boy was burning brightly in the wire basket.

An important factor in the case is the danger which fire has for children of tender years. In this State, while liability to trespassing children has not been limited to highly dangerous conditions (*Harris v. Mentes-Williams Co. Inc.*, 11 *N. J.* 559 (1953); *contra* see *Restatement, Torts,* § 339, *title,* and § 339(*b*) ("serious bodily harm"); *cf. Harper and James, supra,* 1456), still the greater the danger, the greater the *quantum* of care that the law demands of a defendant. *Maccia v. Tynes,* 39 *N. J. Super.* 1, 8 (*App. Div.* 1956). Our cases have repeatedly called attention to the dangerousness of fire to children. *Strang v. South Jersey Broadcasting Co.,* 9 *N. J.* 38, 43 (1952), affirming 10 *N. J. Super.* 486, 492 (*App. Div.* 1950) (in the Appellate Division it is said that fire is a temptation to children, causing them to play with it, and hence that the danger to them, may be greater if the fire is small than if it is large and terrifying); *cf.* the discussion as to the danger of fire in *Imre v. Riegel Paper Corp.,* 24 *N. J.* 438, 444 (1957). But see *Harper and James, supra,* 1452 and *Prosser, supra,* 441 (*cf.* 326–328), stating unrealistically that children can be expected to appreciate the risks of fire, and therefore implying that liability should not extend to such risks. *Cf.* also *Annotation, "Fire as Attractive Nuisance,"* 27 *A. L. R. 2d* 1187 (1953). As Judge (now Justice) Francis said in *Cole v. Thompson,* 27 *N. J. Super.* 561, 565 (*App. Div.* 1953), "[p]ersons in the situation of [defendant] are

obliged to realize that very young children may not have the capacity to estimate or appreciate the danger of playing around or with a fire." In passing we might observe that this question, whether the risk is one which children are likely to appreciate, is merely one aspect of the general standard of care imposed on the defendant, namely, can the defendant reasonably anticipate that the condition involves an unreasonable risk to persons in the infant's position. But *cf.* the special provision appearing in the *Restatement, Torts,* § 339(c). In this connection, compare the views of this court stated in *Mistretta v. Alessi,* 45 *N. J. Super.* 176, 181 (*App. Div.* 1957), with respect to § 342, *comment e. Cf.* further, *Hoff v. Natural Refining Products Co.,* 38 *N. J. Super.* 222, 228 (*App. Div.* 1955).

There was proof here (indicated in Serino's deposition) that Serino was 80 at the time of the accident. At the time of the trial four years later, his mental processes were so confused that he was withdrawn from the stand. The thought of a man of the age of 80 attending a fire, with flames protruding through a wire basket and children playing about, may arouse some apprehensions in the mind of a reasonable person. From Serino's statement that he "always looked into" the basket when he left the place, it may be inferred that he always left the basket on the lot after a fire, with the ashes still in the basket (the basket was doubtless hot). Further, from defendant's observations of the lot, it may fairly be inferred that he was aware of this. Should defendant reasonably have relied on another person, particularly this man of 80, to take proper precautions when leaving a basket of hot ashes there? It might be observed as a matter of common experience, that ashes from fires, which appear to be out, are not infrequently re-ignited by agitation of one sort or another. Children, too, may be attracted to them and may themselves cause the fire to be ignited again. In addition, and of significance on this whole question, is the warning given by Mr. Lorusso, the father, to his children, telling them to stay off this lot when somebody was making a fire.

Having in mind the various circumstances here, we think it should have been left to a jury to determine whether a person of ordinary prudence in defendant's position would have anticipated an unreasonable risk of harm to the trespassing children.

Reversed, and new trial ordered.