57 N.J. Super. 590 (1959)
155 A.2d 266
ALEXIS TURPAN, AN INFANT BY HER GUARDIAN AD LITEM, HARRY TURPAN, AND HARRY TURPAN, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
ELLIOT MERRIMAN, EDITH MERRIMAN AND MERRI HOMES, INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1959.
Decided November 2, 1959.
*592 Before Judges CONFORD, FOLEY and SCHALICK.
Mr. Robert B. Kroner argued the cause for plaintiffs-respondents (Messrs. Cummis & Kroner, attorneys).
Mr. Thomas V. Weaver argued the cause for defendants-appellants (Messrs. Reid & Flaherty, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment entered in the Law Division on a jury verdict in favor of plaintiffs, and from a denial of a motion subsequently made for judgment notwithstanding the verdicts. R.R. 4:51-2. The determinative question is whether or not the trial court erred in denying the motions for involuntary judgment of dismissal which were made at the end of the plaintiffs' case and at the close of the entire case.
The individual defendants were the owners of land on which Elliot Merriman was constructing a residence in behalf of Merri Homes, Inc. on Jones Road, Englewood, New Jersey, an exclusively residential section. Construction had commenced in the early part of August 1956 and by October 6, 1956, the accident date, it had progressed to a stage where the building was completely framed and the rough *593 heating, rough plumbing, and rough wiring were being installed. Doors had not been hung on either of the two entrance ways to the dwelling. On the afternoon of October 6th the infant plaintiff, then eight years of age, was walking along Jones Road accompanied by a playmate. Each of the children carried two kittens. At a point across the way from defendants' property they paused to play with their pets. While doing so, two of the kittens ran across the street toward the partially constructed building; the children followed in an effort to retrieve them. What happened next is not entirely clear. However, the composite of the child's testimony leads us to conclude that she entered the building through an open doorway while still in pursuit of her errant kitten. The interior was divided into two sections. She walked through both and was leaving, kitten in arms, when she stepped on one end of a piece of curled metal scrap causing the other end to spring upward and lacerate her knee. Although there was testimony that approximately 50 children resided in the neighborhood there was no evidence that they had been seen to trespass on or about defendants' property at any time prior to the date of the accident, nor was there evidence that children were accustomed to play on Jones Road in the vicinity of the structure.
The case was presented on the theory that in the circumstances outlined a jury question arose under the doctrine laid down in Restatement, Torts, § 339, commonly referred to as the "infant trespasser rule." The section provides:

"Artificial Conditions Highly Dangerous to Trespassing Children.
A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition *594 or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
Since Strang v. South Jersey Broadcasting Corp., 9 N.J. 38 (1952), the infant trespasser rule has frequently been approved by our courts and may now be said to be firmly entrenched in the law of this State. Simmel v. New Jersey Coop Co., 28 N.J. 1 (1958); Wytupeck v. City of Camden, 25 N.J. 450 (1957); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); Coughlin v. U.S. Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958), certification denied 28 N.J. 527 (1959); Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222 (App. Div. 1955). In the Strang case, supra, 9 N.J. at page 45 the rationale of the doctrine was stated to be that where a trespass on land is foreseeable and a condition thereon involves unreasonable risk of death or serious bodily injury to a trespassing child the possessor of the land becomes liable for injury to such child. The court emphasized that the basis of liability is the foreseeability of harm and the measure of duty is care in proportion to the foreseeable risk.
In Simmel, supra, 28 N.J. at page 9 it was said that no inflexible rule can be set forth concerning the "prophylactic measures" to be taken by a defendant in a particular situation; and in Diglio, supra, 39 N.J. Super at page 145, that the circumstances of each case are of pivotal significance. In considering this case on its own factual footing we deem it noteworthy that in all of the reported cases in this State wherein recovery by the infant trespasser has been allowed, the obligation of the defendant to foresee the risk has been imputed by reason of the dangerous nature of the condition causing injury and because of prior knowledge that children customarily either trespassed upon, or were permitted to use, the land on which the dangerous condition existed. In Strang, supra, the infant suffered burns in an unattended *595 bonfire which had been set by defendant on its unused lands with knowledge that they were used by children as a playground. In Simmel, supra, the child wandered into an unenclosed lot which had been used as a dump for rubbish and debris, stumbled on junk which was afire, and was burned. There was evidence that there were fires on the premises "every day" or "practically every day" and that children constantly played there. In Wytupeck, supra, the defendant owned a 14-acre tract which children traditionally used as a playground. The plaintiff suffered serious injuries when he climbed a fence enclosing defendants' power plant on the property and came in contact with an uninsulated electric wire. In Harris, supra, the infant was injured when he fell into an excavation on lands which had been utilized by children for recreational purposes for many years. In Diglio, supra, defendant permitted children to use its lands for play. The plaintiff was injured when he fell against barbed wire which topped a cyclone fence erected by defendant. In Hoff, supra, the defendant maintained a huge mound of chemical refuse, 50 feet in height, which children had been accustomed to climb, over a span of many years. The infant plaintiff was injured when, while descending the mound, a cave-in occurred and he was precipitated to the ground.
It is readily observable that neither the factor of knowledge of prior trespass nor that of maintaining an obviously dangerous condition was present here. The absence of proof that the condition causative of injury was inherently or obviously dangerous does not exonerate a landowner or occupier of liability, since it is conceivable that an innocuous condition may be made highly dangerous to the child trespasser by the foreseeable act of himself or another. Cf. Prosser, "Trespassing Children," 47 Cal. L. Rev. 427, 454 (1959). Nor does the fact that a damaging incident was not preceded by a history of known trespass or license excuse the landowner or occupier if he can reasonably be expected to have foreseen the likelihood of the presence of children *596 at the situs. 2 Harper & James, The Law of Torts, pp. 1451-1452 (1956). However, the absence of a showing of prior trespass and of a patent condition of danger may in a particular case achieve a status of vital importance in the ultimate determination of liability.
The defendants were not insurers, Simmel v. New Jersey Coop Co., supra, and their liability to respond in damages was not made out unless the trial court, guided by the Restatement, Torts, § 339, might rationally conclude that the totality of the proofs could legitimately evoke differences of opinion in the minds of reasonable men respecting defendants' responsibility. Thus the denial of the motions for involuntary dismissal must be regarded as a judicial determination that it was open to the jury to find that defendants should have foreseen both the entering by children of the partially constructed house although none had previously entered or been seen in the vicinity in which it was located; and that a trespassing infant might accidentally step upon the piece of scrap metal in such a manner as to injure herself and so should have realized the capacity of this relatively harmless scrap to become highly dangerous to a child coming on the premises.
In testing the soundness of the trial court's view of the implications of the proof we are impressed by a recent pronouncement of Dean Prosser:
"To begin with, there is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death upon a green apple, pick up a stick and poke it into his eye, or have his skull fractured by a rock found and thrown by his companion. Children may, and do, do practically everything. Unless the possessor is to shoulder the impossible burden of making his land completely `child-proof,' which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence." "Trespassing Children," 47 Cal. L. Rev. 427, 452 (1959). Cf. Callahan v. Dearborn Developments Inc., 57 N.J. Super. 437 (App. Div. 1959).
We decline to hold that these defendants maintained a condition on the premises which they reasonably could be *597 expected to have foreseen would cause a child to be injured as this one was. Specifically, we see no justification in reason to bind the defendants to foresight that the piece of metal, a normal by-product of the work being done, fortuitously would be the cause of injury to the trespassing infant.
Reversed, with the direction that judgment be entered in favor of defendants.