JAMES W. LONG, AS ADMINISTRATOR *AD PROSEQUEN-DUM* OF THE ESTATE OF JAMES W. LONG, Jr., DE-CEASED, *ETC.*, PLAINTIFF-RESPONDENT, v. SUTHER-LAND-BACKER COMPANY, A BODY CORPORATE, DE-FENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 21, 1966—Decided April 1, 1966.

Before Judges SULLIVAN, LEWIS and KOLOVSKY.

*Mr. Robert V. Carton* argued the cause for appellant (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

*Mr. Peter Shebell, Jr.* argued the cause for respondent (*Mr. Thomas F. Shebell,* attorney).

The opinion of the court was delivered by

SULLIVAN, S. J. A. D.  Plaintiff, as administrator *ad prosequendum,* recovered a $13,500 judgment in a suit under the Death Act. The decedent was an infant trespasser on defendant's property. He was killed when a heavy two-wheel cement mixer with which he and three other boys were playing was caused to topple forward.

The boys had entered upon defendant's property through a hole in the wall of defendant's shed which hole had existed for "some time" and had been used by boys on prior occasions to gain entry to defendant's property. The mixer had been left by defendant in an upright position with the towing bar raised. Decedent, who was in front of the mixer, was pinned under the towing bar when the machine toppled forward.

We are satisfied that the evidence made out a jury question of defendant's liability within the requirements of *section* 339 of the *Restatement of Torts.* We also conclude that the court's charge as a whole was adequate as well as correct. Defendant's objections to it are not well taken. The verdict of $13,500 was not excessive as a matter of law.

Affirmed.

KOLOVSKY, J. A. D. (dissenting).  In my opinion, defendant's motion for judgment should have been granted.

Under *section* 339 of the *Restatement of Torts,* in order to subject a possessor of land to liability for physical harm to children trespassing thereon caused by an artificial condition on the land, it must appear that:

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and * * *." 2 *Restatement of Torts* 2d (1965) § 339

As the *Restatement's* comment on clauses (a) and (b) of *section* 339 points out,

"g. 'Has reason to know.' In order for the rule stated in this Section to apply, the possessor of the land must know or have reason to know that children are likely to trespass on the land. 'Has reason to know' is defined in § 12 to mean that he has information from which a person of reasonable intelligence, or of the superior intelligence of the actor, would infer that the fact in question exists, or would govern his conduct upon the assumption that it does exist. It is not enough that the possessor 'should know' of trespasses (see § 12), in the sense that a reasonable man in his position would investigate to discover the fact. The possessor is under no duty to make any investigation or inquiry as to whether children are trespassing, or are likely to trespass, until he is notified, or otherwise receives information, which would lead a reasonable man to that conclusion.

*     *     *     *     *     *     *     *

h. 'Has reason to know.' The statement made in Comment *g* applies equally as to the possessor's knowledge, or reason to know, that the particular condition exists upon his land, and that it is likely to be dangerous to trespassing children. The possessor is under no duty to inspect or police his land to discover whether such conditions exist; and he becomes subject to liability only when he knows or has reason to know that they do exist, and that they are dangerous." 2 *Restatement of Torts* 2d (1965), *p.* 201

In my view, the evidence in this case is not sufficient to warrant a jury finding that defendant knew or had reason to know that children were likely to trespass on its property. The property, situate between a dairy on one side and a union hall on the other, was enclosed in part by the wall of the shed thereon, the remainder by a fence at least five feet ten inches

high with pickets on top. Defendant used the property for the storage of its construction and building equipment.

There is proof that three planks had been missing from the wall of the shed for some period of time. There is also testimony by the deceased boy's companions that they had entered into the premises through the hole left by the missing planks on several occasions during the two-week period preceding the accident. (One of the boys indicated he may have been there over a two-month period.) But there is no evidence from which it may be inferred that defendant knew or should have known that children had been in the shed or yard on prior occasions, or that it was likely that they would trespass. It may be noted that the proofs do not even show that the trespasses occurred at a time of the day when it might be expected that defendant would be aware thereof. On the contrary, one of the boys testified that he had never seen anybody in defendant's yard during his various excursions into the property.

Further, as I read the record, there is no basis for a jury finding that the defendant realized or should have realized that the storage of its cement mixer on its own property created a condition that was likely to be dangerous to trespassing children. There was nothing inherently dangerous in the parking of this heavy piece of equipment with its three- or four-foot towing tongue or pole pointing upwards.

The testimony is that the boys decided to try to push the towing tongue to the ground and that for that purpose, one boy was stationed at the left wheel, another at the right wheel, a third with his back braced against the rear of the mixer, "pushing with his back," and the decedent "on the tongue" in front. All "pushed" together, causing the wheels to move forward and the tongue to come down and crush decedent.

To charge defendant with the duty of foreseeing such conduct, to foresee that four 11-year-old boys would proceed to exert their combined strength to move the equipment "would be to make 'foresight' synonymous with 'omniscience.'" *Cal-*

*lahan v. Dearborn Developments, Inc.,* 57 *N. J. Super.* 437, 442 *(App. Div.* 1959), affirmed 32 *N. J.* 27 (1960) ; see also, *Scheffer v. Braverman,* 89 *N. J. Super.* 452, 456 *(App. Div.* 1965).

Finally, even if the evidence were sufficient to warrant submitting the case to the jury, I agree with appellant's contention that the court's charge as to "foreseeability" was prejudicially erroneous.

I would reverse and direct that judgment be entered in favor of defendant.