104 N.J. Super. 210 (1967)
249 A.2d 603
HAROLD CALIGUIRE AS ADMINISTRATOR AD PROSEQUENDUM FOR THE ESTATE OF VINCENT CALIGUIRE AND HAROLD CALIGUIRE, INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
CITY OF UNION CITY IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1967.
Decided November 9, 1967.
*212 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Robert J. Carluccio argued the cause for appellant.
Mr. Robert H. Wall argued the cause for respondent.
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by plaintiff Harold Caliguire, individually and as administrator ad prosequendum of the estate of Vincent Caliguire, from a judgment of involuntary dismissal entered at the close of plaintiff's case in the Superior Court, Law Division.
On May 2, 1963, plaintiff's son, Vincent Caliguire, age 12, was injured when he fell from a rope suspended from a tree on defendant's property on which he had been swinging. He died two days later as a result of injuries sustained in the fall.
*213 Plaintiff brought suit to recover damages for the personal injuries and wrongful death of his son. He charged that defendant was negligent in maintaining a dangerous condition on its property on which defendant knew or should have known children would be likely to trespass and that it permitted a rope attached to a tree to be used by children as a swing. Defendant denied it was negligent in the maintenance of its property and further denied all knowledge of the existence of the rope. It asserted as separate defenses (1) that the accident was caused by the act of a third party over which it had no control, (2) contributory negligence of the decedent, (3) that decedent was a trespasser, and (4) that it was absolved from liability under the doctrine of municipal immunity.
Defendant's property was an unimproved tract of land which it had acquired as the result of a tax foreclosure in 1952. It consisted of a steep slope or cliff located near the top of the Palisades which extended easterly down to Weehawken. Adjoining it on the west was a level tract of privately owned improved property known as the Abbey Inn site, about 90 to 100 feet in depth, which fronted on Mountain Road. Along most of the rear of the private tract was a wall, three feet in height and one and one-half feet in width, which marked the eastern boundary of the property. The Abbey Inn site was without trees or foliage, but the city property was covered with trees, boulders and heavy foliage, and the footing was dangerous.
The tree from which the rope was suspended was located 50 feet down the slope from the boundary wall. The rope was about seven or ten feet in length and the tree, which extended out on the side of the hill, was "somewhat taller." According to three children, who were playing with decedent on the slope and who witnessed the accident, the rope had been tied on the tree for a period of from two weeks to a month. None of the witnesses at the trial knew who placed the rope on the tree.
*214 The accident happened when Vincent took the rope in his hands and swung out over the slope. He apparently lost his grip on the rope, then fell 15 feet to the ground and rolled another 15 feet down the slope.
The evidence showed that the children had played there daily for months before the accident. They testified that whenever they were observed by the police on the city or Abbey Inn property they were chased away.
Gerald Cerulli, a police officer of Union City, was called as a witness for plaintiff. He testified that he had patrolled the Abbey Inn area by motorcycle or police car for five years before the accident; that he passed along Mountain Road at least three times a day, and made an observation over the rear wall every day. He said whenever he saw children either on the private property or the slope of the city property beyond the wall he would chase them away; that there was a "standing order" to do so. He said that there was heavy foliage on the city property down from the wall and that he had never observed the rope suspended from the tree nor had anyone informed him of its existence.
The trial judge granted defendant's motion to dismiss holding that proof of actual knowledge of the existence of the rope was essential to establish a prima facie case. This appeal followed.
Plaintiff contends that the question of knowledge by defendant of the dangerous condition existing on its land was a factual issue for determination by the jury and that the court erred in dismissing the action. He alleges the proofs showed that defendant knew that children played on its property and argues that defendant was liable for Vincent's death because (1) it knew that the natural condition of the land was inherently dangerous, (2) it had constructive knowledge of the existence of the rope suspended from the tree upon which children would swing, and (3) in any event, based on the evidence and the logical inferences to be drawn therefrom, the jury could have found that defendant had actual knowledge of the existence of the rope swing.
*215 The liability of a possessor of land for physical harm to children trespassing thereon is dealt with under the rule set forth in 2 Restatement, Torts, 2d, § 339, p. 197 (1965). It provides:
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children. * * *"
Moreover, if an artificial condition exists upon the land, of which the landowner has knowledge, and which reasonable men may recognize as having propensities for causing an unreasonable risk of harm to an infant tresspasser, then it makes no difference whether the condition was created by third persons or the landowner himself. Simmel v. New Jersey Coop Co., 28 N.J. 1, 10 (1958).
We find no support for plaintiff's contention that defendant municipality can be held liable because it had knowledge that the natural condition of the land was inherently dangerous, i.e., that it was a dangerous cliff or slope. Our cases have not extended liability for injuries resulting from the maintenance of natural conditions on the land even though the accident would not have happened if the landowner had taken appropriate action to prevent the child who sustained injury from trespassing. Ostroski v. Mount Prospect Shop Rite, Inc., 94 N.J. Super. 374, 380 (App. Div. 1967). Moreover, it was the use of the rope as a swing by plaintiff's decedent, not the slope or cliff, which precipitated his fall.
Plaintiff also argues that defendant is liable because it had "constructive" or imputed knowledge of the existence of the rope swing. This is based on the testimony that the *216 rope had been suspended from the tree for a period of two weeks to a month before the accident happened. We conclude that this argument is without merit. In Simmel v. New Jersey Coop Co., supra, the court set aside a judgment in favor of an infant trespasser because the trial judge did not limit the issue for determination by the jury to actual knowledge by the owner of the dangerous condition on his land, but told the jury that knowledge could be imputed if the condition existed for an unreasonable length of time before the accident.
In Simmel the court stated that the landowner is not an insurer of the safety of an infant trespasser, that he has no duty to periodically inspect the premises in order to ascertain whether third persons, themselves trespassers, might have created dangerous artificial conditions thereon. The case holds that before a landowner can be held responsible he must have actual knowledge of the condition created by the third persons. That decision controls us here.
The burden of proving actual knowledge by defendant of the existence of the rope swing on its property before the accident occurred was on the plaintiff and the record reveals he produced no direct evidence of such knowledge. However, plaintiff contends that the question of whether defendant had actual knowledge of the rope swing should have been submitted to the jury. He cites Lorusso v. De Carlo, 48 N.J. Super. 112 (App. Div. 1957) in support of his position. That case is readily distinguishable on the facts. There a four-year old child, while trespassing on defendant's vacant lot, was burned by a fire caused by a third person who was burning papers on the lot. There was evidence that less than two weeks before the accident the defendant knew a third person was using his land for such purposes. The court held that such evidence presented a jury question as to whether the defendant should have anticipated an unreasonable risk of harm to trespassing children by fires set by the third person.
*217 At oral argument plaintiff also contended that he was not bound by the testimony of Officer Cerulli who testified that he never saw the rope when he made his daily inspection of the city property. He argues that Cerulli's testimony, though uncontroverted, was not conclusive because his credibility was in issue, and it therefore was a matter for the jury and not the trial judge to decide.
The resolution of the question of when it is for the jury alone to evaluate the credibility of a plaintiff and his witnesses and when it is within the province of the trial judge to do so was answered in Ferdinand v. Agricultural Ins. Co. of Watertown, New York, 22 N.J. 482 (1956). There the court stated:
"Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. [Citations omitted] But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury." (22 N.J., at p. 494)
Here the issue was whether Cerulli, for the city, had actual knowledge prior to the accident of the presence of the rope. In his argument on the motion for dismissal, plaintiff's counsel initially stated:
"I do not say that there was actual notice but I do say that there was constructive notice. I can't say that the policeman [Cerulli] misrepresented that he never saw the rope."
He argued:
"[T]he jury can infer and draw the inference that having looked over the side of the cliff, having the fact that the tree was over seven feet tall, growing up, the fact that the wall was only three feet high and the rope was hanging from the tree; that, if he didn't see it, he should have seen it, your Honor.
*218 The Court: In other words, constructive notice.
Mr. Carluccio: Constructive notice. * * *"
Thereafter, plaintiff's counsel adopted the contention that the jury could have concluded from Cerulli's testimony that the city had actual notice of the presence of the rope.
Implicit in the granting of the motion for involuntary dismissal was the trial judge's conclusion that men of reason and fairness could not honestly differ in their appraisal of Cerulli's testimony that he had not observed the rope before the accident. His testimony was not necessarily at variance with the testimony of other witnesses who said that the rope had been suspended from the tree for a period of two weeks to a month. His attention was primarily directed to the possible presence of trespassers. For the most part Cerulli's observations were made either from the driveway of the old Abbey Inn property or from the public street (Mountain Road). The tree from which the rope hung was some 50 feet down the hill beyond the three-foot stone wall which was located 90 to 100 feet back from Mountain Road. The rope was described as hanging from a tree which grew out of the side of the cliff thus indicating that to an observer above it would have been difficult to see. Moreover, Cerulli's testimony that the city property from the stone wall down to Weehawken contained heavy foliage was not contradicted but was confirmed to some extent by testimony elicited on cross-examination of Martha Frueholz, one of the children who witnessed the accident.
Where, as here, the uncontradicted testimony of a witness is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary or surprising in its nature, and no other ground exists for hesitating to accept it as the truth, we cannot conclude that the trial judge erred in doing so. The mere fact that Cerulli was a member of the police department did not compel submission of the issue of his credibility to the jury. There was no evidence that he had any personal interest in the result of the trial or *219 that he was in anyway responsible for the happening of the accident. There was no reason for him to commit perjury. He was called as a witness for the plaintiff and after he testified no attempt was made to contradict, impeach or neutralize his testimony. While, as plaintiff argues, he was not conclusively bound by Cerulli's testimony we believe the trial judge could properly accept it as factually true  not because Cerulli was called as a witness by the plaintiff, but because it was the only testimony offered on the subject of defendant's knowledge of the rope swing on its property. We are satisfied that there was no error on the part of the trial judge in refusing to submit the issue of Cerulli's credibility to the jury.
In determining the propriety of the trial judge's action in granting defendant's motion for a judgment of involuntary dismissal we have accepted as true, as we must, all evidence which supports the plaintiff and have given him the benefit of all legitimate inferences which are to be drawn in his favor. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955). From our careful review of the evidence we are convinced that fair minded men could not have determined that defendant had actual notice of the rope swing on its property, and accordingly, that the trial judge properly granted defendant's motion for an involuntary dismissal.
Affirmed.
CONFORD, S.J.A.D. (dissenting).
I am unable to agree with the court's conclusion that a jury question was not presented as to whether Officer Cerulli actually knew of the presence of the rope hanging from the tree at some time prior to the accident notwithstanding his denial that he ever saw it. I think a jury could reasonably have disbelieved him in the light of the evidence as to the surrounding circumstances. Plaintiff was of course entitled to the most favorable legitimate inferences from the proofs on the motion to dismiss. If Cerulli knew, his knowledge is imputable to defendant, *220 and it then became a jury issue as to whether the rope had "propensities for causing an unreasonable risk of harm to infant trespassers" and whether defendant acted with due prudence under the circumstances in not removing it. Simmel v. New Jersey Coop Co., 28 N.J. 1, 10 (1958).
The thick, manila rope, of a 7-10 foot length, and knotted at the end, was hanging there for a period of from two weeks to a month, and a group of children played on it almost every day after school and week-ends. The tree was only 50 feet below an elevated observation point from which the officer said he had been making daily surveillance down the slope long prior to the accident. He was under instructions to chase children off the hill for "safety" and other reasons. He stated he could see children down the hill unless they were hiding. Another witness also said the children could be seen down the hill from the wall on top. Cerulli said he frequently chased them away from the hillside during his tours of inspection. A child swinging from a rope suspended from a tree would, it may be inferred, be particularly noticeable at a distance of only 50 feet. And the attendant presence of a group of children in that setting could inferably be noticed by sound as well as sight.
Although the officer described the hill as having "heavy foliage," he did not relate that description to any particular time or date. Indeed, the accident having occurred on May 2, 1963, the period of daily observation during which the officer claims never to have seen the rope, although making regular inspection and observation in that direction, was substantially during the month of April. We may take judicial notice that arboreal foliage is sparse at that time of year and becomes copious only later in the Spring.
While one of the child witnesses for plaintiff on cross-examination answered "Yes" to the question, "Q. But this was in the Springtime when there were leaves on the trees?," the import of the question related to the time of the accident, May 2, not the preceding period of a month when the allegedly *221 fruitless observations were made. Moreover, there is a difference between "leaves on the trees" and "heavy foliage."
The officer might be deemed by the jury to have had some bias as to the issue tried, as the accident might have been thought to reflect a failure of the municipal "safety" policy with respect to local children playing in the area  a policy which the officer had been delegated to enforce. Contrary to defendant's argument, the present-day view is that the plaintiff should not be conclusively bound by the testimony of an adverse party (or his representative) whom he has called as a witness. Becker v. Eisenstodt, 60 N.J. Super. 240, 248-249 (App. Div. 1960).
Applying the rule and language of Ferdinand v. Agricultural Ins. Co. of Watertown, New York, 22 N.J. 482, 494 (1956), I do not believe that Cerulli's denial of ever having seen the rope is so "clear and convincing," so free from contradiction "by witnesses or circumstances," and "so plain and complete that disbelief of [his] story could not reasonably arise in the rational process of an ordinarily intelligent mind."
It must be emphasized that the officer's denial of seeing the rope implies a denial of seeing any children playing on the rope, and this as against the clear and credible proof that the children played on the rope daily for somewhere between two weeks and a month prior to the accident and the officer's concession that he was making daily surveillance of the specific area during the same period.
There was therefore in my view a patent jury question as to whether defendant, through Officer Cerulli, knew prior to the accident of the condition which gave rise to this accident.
Defendant does not argue that any aspect of the rule of Simmel v. New Jersey Coop Co., supra, other than the question of knowledge by the landowner, precluded giving the case to the jury. As to the defendant's assertion of the defense of municipal tort liability, I believe this is dissipated *222 by the recent decision of the Supreme Court in B.W. King, Inc. v. Town of West New York, 49 N.J. 318, 326 (1967).
I would reverse.