**Samuel FULGINITI, a minor by his Guardian, Michael A. Marolla, et al., Appellants,**

v.

**Peter TOCCO and Margaret M. Tocco.**

**No. 71–1325.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) on March 20, 1972.

Decided May 8, 1972.

"A. Yes."

Ralph J. Kmiec, Kmiec & Palumbo, Camden, N. J., for appellants.

Carl Kisselman, Kisselman, Deighan, Montano, King & Summers, Camden, N. J., for appellees.

Before ADAMS, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

In this diversity action the plaintiffs, a minor and his parents, seek damages resulting from injuries sustained by the minor plaintiff when he was struck in the eye by a piece of copper tubing wielded by a playmate. The District Court granted the defendants' motion for summary judgment, and the plaintiffs appeal from that order. We agree with the District Court that the pleadings, depositions, and answers to interrogatories "show that there is no genuine issue as to any material fact" and that under New Jersey law the defendants are "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[1]

---

1. Plaintiffs are citizens of Pennsylvania and defendants are citizens of New Jersey, where the accident took place. The amount in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

*See* 28 U.S.C. § 1332. Since our jurisdiction rests on diversity of citizenship, we look to the law of New Jersey to determine whether, on the facts presented here, the plaintiffs have an actionable claim. Erie

The depositions reveal that in June, 1967, the defendants Peter and Margaret Tocco lived at 3925 Garden Avenue, Pennsauken, New Jersey, from which address Peter Tocco ran his business as a contractor. In the rear of the family dwelling Mr. Tocco stored cinder blocks and lumber. Various pipes and a broken comptometer or adding machine, along with a great deal of junk and other debris, also lay on the ground. The rear yard was unfenced and Tocco had from time to time observed children in the yard.

The Toccos' rear neighbors were the Dragani family. On Sunday, June 11, 1967, a family gathering was held at the Dragani home. Among the numerous family members present were two grand-nephews of the Draganis, nine-year-old John Cherry and the minor plaintiff Samuel Fulginiti, who was three years old.

During the late afternoon, while the two boys were playing in the Tocco yard, John Cherry picked up a piece of copper tubing and began to strike the broken adding machine. While John was striking the adding machine, the minor plaintiff came up behind him and was struck in the right eye by the tubing as John was bringing the tubing back over his shoulder to swing it. The injury eventually resulted in the loss of the eye.

■ There can be no doubt that New Jersey has adopted the infant-trespasser rule of Section 339 of the Second Restatement of Torts.[2] Turpan v. Merriman, 57 N.J.Super. 590, 594, 155 A.2d 266, 268 (App.Div.1959), certif. denied, 31 N.J. 549, 158 A.2d 450 (1960), and cases there cited; Callahan v. Dearborn Developments, Inc., 57 N.J.Super. 437, 154 A.2d 865 (App.Div.1959), aff'd per curiam, 32 N.J. 27, 158 A.2d 830 (1960); Scheffer v. Braverman, 89 N. J.Super. 452, 215 A.2d 378 (App.Div. 1965); Ramundo v. Turi, 92 N.J.Super. 73, 222 A.2d 189 (App.Div.), certif. denied, 48 N.J. 141, 224 A.2d 325 (1966); Ostroski v. Mount Prospect Shop-Rite, Inc., 94 N.J.Super. 374, 228 A.2d 545 (App.Div.), certif. denied, 49 N.J. 369, 230 A.2d 400 (1967); Caliguire v. City of Union City, 104 N.J.Super. 210, 249 A.2d 603 (App.Div.1967), aff'd per curiam, 53 N.J. 182, 249 A.2d 577 (1969).

But New Jersey courts have never read Section 339 as making "the possessor of land an absolute insurer of the safety of trespassing children." Diglio v. Jersey Central Power & Light Co., 39

R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Waldron v. Aetna Casualty & Surety Co., 141 F.2d 230 (3d Cir. 1944); Moran v. Pittsburgh-Des Moines Steel Co., 166 F.2d 908 (3d Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770 (1948); Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir.), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

2. Restatement (Second) of Torts § 339 reads as follows:
"Artificial Conditions Highly Dangerous to Trespassing Children
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
While the earlier New Jersey cases applied Section 339 of the first Restatement of Torts, the differences between the two sections are not relevant here.

N.J.Super. 140, 143, 120 A.2d 650, 652 (App.Div.1956). Liability under Section 339 exists only when the injury to the trespassing child is "caused by a structure or other artificial condition" that the landowner should foresee would create an unreasonable risk of death or serious bodily harm to the child.

The appellants have argued very persuasively that the pile of lumber and cinder blocks and the other junk in the Tocco back yard, taken together, were a condition creating unreasonable risks to children who played there. But our initial inquiry is not whether a given condition is dangerous, but whether that condition is the "cause" of the particular injury within the meaning of Section 339.

We agree with Prosser that the meaning of the words "caused by" in Section 339 does not differ "in any significant way from the usual approach to 'proximate cause' found in the ordinary negligence case." Prosser, Trespassing Children, 47 Cal.L.Rev. 427, 445 (1959). The law is clear that before there can be proximate cause, or legal cause, there must be cause in fact, or "but for" cause. Kulas v. Public Service Elec. & Gas Co., 41 N.J. 311, 317, 196 A.2d 769, 772 (1964); see Restatement (Second) of Torts § 432 (1965); 2 Harper & James, The Law of Torts § 20.2, at 1110–11 (1956, Supp.1968). In the present case it is evident that Samuel Fulginiti was not injured by the various junk and debris in the back yard. The only items in the yard that entered into the events leading up to the injury were the broken adding machine and the piece of copper tubing.

We see no argument that the adding machine in any way served as a "cause" of the minor plaintiff's injury or that the abandoned adding machine resting on the ground was so dangerous as to create unreasonable risks of harm to children. We are left, then, with the copper tubing.

The depositions of several witnesses all agree that the copper tubing that John Cherry picked up to swing was about eighteen inches to two feet long, and of a diameter of three-eighths to three-quarters of an inch. It would be unreasonable to find, under the circumstances, that the Toccos realized or should have realized that this short length of copper tubing would "involve an unreasonable risk of death or serious bodily harm" to children.

We can conceive of no object or condition in existence that cannot under any circumstances be made dangerous to children. Dean Prosser has written:

"To begin with, there is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death upon a green apple, pick up a stick and poke it into his eye, or have his skull fractured by a rock found and thrown by his companion. Children may, and do, do practically everything. Unless the possessor is to shoulder the impossible burden of making his land completely "childproof," which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence. Accordingly, there is a long list of cases involving normally harmless objects, such as a sharp-pointed pole, railroad spikes, a wooden horse, a piece of shingle on a roof, a heavy lawn roller on level ground, a stationary tractor, lime putty left lying about, a pile of ties, a red lantern, a stairway bannister, old automobile bodies in a junk yard, and the like, which have been held to be so innocuous that as a matter of law there was no liability." [footnotes omitted].

Prosser, Trespassing Children, 47 Cal.L. Rev. 427, 452–3 (1959). In the present case, the presence of the piece of copper tubing presented no more risk of danger

than that to which a child is constantly exposed in his ordinary daily life. To impose liability under Section 339 in this case would, we feel, for all practical purposes make an occupier of land an "absolute insurer" of the safety of trespassing children, contrary to the holding of the New Jersey cases. *See* Diglio v. Jersey Central Power & Light Co., *supra.*

In Long v. Sutherland-Backer Co., 48 N.J. 134, 224 A.2d 321, rev'g per curiam 92 N.J.Super. 556, 224 A.2d 329 (App. Div.1966), a boy had been killed when he and several companions entered a construction site and began to play with a cement mixer, which tipped forward and crushed the boy. The Appellate Division upheld the jury's verdict based on Section 339 liability, over the dissent of Judge Kolovsky. On appeal, the New Jersey Supreme Court reversed for the reasons expressed in Judge Kolovsky's dissenting opinion.

Although Judge Kolovsky's opinion was based in part on the defendant's lack of knowledge that children trespassed on the construction site, he also felt that:

"there is no basis for a jury finding that the defendant realized or should have realized that the storage of its cement mixer on its own property created a condition that was likely to be dangerous to trespassing children. There was nothing inherently dangerous in the parking of this heavy piece of equipment with its three or four-foot towing tongue or pole pointing upwards." 92 N.J.Super. at 559, 224 A.2d at 331.

The piece of copper tubing in this case is far more innocuous than the heavy cement mixer in the *Long* case.

Another similar case is Turpan v. Merriman, *supra.* There the plaintiff was injured when she wandered onto a housing construction site and stepped on one end of a piece of curved metal, causing the other end to spring up and strike her knee. The court held Section 339 inapplicable, noting:

"We decline to hold that these defendants maintained a condition on the premises which they reasonably could be expected to have foreseen would cause a child to be injured as this one was. Specifically, we see no justification in reason to bind the defendants to foresight that the piece of metal, a normal by-product of the work being done, fortuitously would be the cause of injury to the trespassing infant." 57 N.J.Super. at 596–597, 155 A.2d at 270.

Again, the piece of copper tubing here would seem less dangerous than the piece of curved metal in *Turpan.*

Our review of New Jersey cases imposing liability under Section 339 convinces us that the condition here is not of the same dangerous class as the conditions involved in the New Jersey cases,[3] and that the New Jersey courts would not see this short length of copper tubing as involving "an unreasonable

---

3. Some of those conditions have been:

(a) unattended fires [Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 86 A.2d 777 (1952); Simmel v. New Jersey Coop. Co., 28 N.J. 1, 143 A.2d 521 (1958); Lorusso v. DeCarlo, 48 N.J.Super. 112, 136 A.2d 900 (App.Div.1957)];

(b) uninsulated high voltage wires [Wytupeck v. City of Camden, 25 N.J. 450, 136 A.2d 887 (1957)];

(c) an excavation four feet deep [Harris v. Mentes-Williams Co., 11 N.J. 559, 95 A.3d 388 (1953)];

(d) a fence topped with barbed wire (Diglio v. Jersey Central Power & Light Co., *supra*);

(e) a mound of chemical refuse 50 feet tall [Hoff v. Natural Refining Products Co., 38 N.J.Super. 222, 118 A.2d 714 (App.Div.1955)];

(f) an open vat of nitric acid [Healing v. Security Steel Equipment Corp., 51 N.J. Super. 123, 143 A.2d 844 (App.Div. 1958)];

(g) an open sedimentation tank resembling a swimming pool [Cloyes v. Delaware Township, 23 N.J. 324, 129 A.2d 1 (1957)].

risk of death or serious bodily harm." Nor does our review of Section 339 cases decided in other jurisdictions shake our conclusion. See Restatement in the Courts, Torts § 339, Torts 2d § 339 (perm. ed. 1932–44, Supp.1948, Supp. 1954, Supp.1965, Supp.1967, Supp.1968–69, Supp.1970).

In Mayer v. Housing Authority of New Jersey, 84 N.J.Super. 411, 202 A.2d 439 (App.Div.1964), aff'd per curiam, 44 N.J. 567, 210 A.2d 617 (1965), a boy was injured when he was struck in the eye by a rock thrown by other children who were playing on the defendant's property. But that case does not aid the appellants here, since the opinion in that case makes clear that liability rested upon the duty of a landlord to his tenant rather than upon the Section 339 duty of a landowner toward trespassing children. Furthermore, the court there imposed liability not because of the presence of stones on the playground, but because the defendant, knowing that children were in the habit of throwing stones, failed to take reasonable precautions to prevent stone-throwing. Here there is no evidence that children habitually picked up items in the Tocco yard and swung them dangerously. Also important is the *Mayer* opinion's distinguishing of a prior case with the comment that it was "an infant trespasser case." 84 N.J.Super. at 424, 202 A.2d at 446.

Also cited by the appellants, and also distinguishable, is Cwik v. Zylstra, 58 N.J.Super. 29, 155 A.2d 277 (App.Div. 1959). In that case one of two boys visiting their grandparents was injured when he fell or was pushed into a pail of scalding water. Liability in that case rested, however, not on Section 339 but on the grandmother's negligence in caring for the boys or on her duty to the boys as social guests. The length of copper tubing in the present case, moreover, could hardly be foreseen to create the same risk of danger presented by the pail of scalding water in the *Cwik* case.

For the reasons stated, we are convinced that the District Court was correct in granting the defendants' motion for summary judgment. Accordingly that order will be affirmed.