189 N.J. Super. 437 (1983)
460 A.2d 210
RAYMOND MILLER, PLAINTIFF,
v.
RICARDO REIS, DEFENDANT-APPELLANT. LOUIS A. CONFORTI AND PHILLIS CONFORTI, PLAINTIFFS,
v.
RICARDO REIS, DEFENDANT-APPELLANT, AND DONNA L. MILLER, DEFENDANT. RICARDO REIS, PLAINTIFF,
v.
INSCO CLAIMS SERVICE CORPORATION AND AMERICAN FIDELITY FIRE INSURANCE COMPANY, DEFENDANTS-APPELLANTS,
v.
CONTINENTAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1983.
Decided May 11, 1983.
*439 Before Judges FRITZ, JOELSON and PETRELLA.
William J. Pollinger argued the cause for appellants Insco Claims Service Corporation, American Fidelity Fire Insurance Company and Ricardo Reis (DeLorenzo & Pollinger, attorneys).
Harry V. Osborne, II argued the cause for third-party defendant-respondent Continental Insurance Company (Evans, Koelzer, Marriott, Osborne and Kreizman, attorneys).
Peter B. Shaw argued the cause for Ricardo Reis (Smith and Shaw, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
*440 This matter presents an insurance question of some importance respecting the statutory requirements for the giving of notice by an insurance company of cancellation of a policy. The appeal is plagued by a number of subsidiary questions, each of which is the subject of easy disposition here. One of these involves an ethical question of how counsel can represent two (or three) appellants in an appeal involving cases which, because they were conjoined in the judgment from which this appeal is taken, we assume to have been consolidated in the trial court, and in one of which his one appellant-client (Reis) is suing his other two appellant-clients (Insco Claims Service Corporation and American Fidelity Fire Insurance Company). We leave this question to others charged with the responsibility of overseeing ethical matters.
Others of these minor issues are the claim of respondent Continental Insurance Company (Continental) in its brief that appellants lack standing "to litigate the issue of P.I.P. coverage under the Continental policy"; its claim that the issue is moot on the assertion that "[i]nasmuch as all of the claims against the putative Continental insured, Ricardo Reis, have been settled within the underlying coverage from A.F.F. [appellant American Fidelity Fire Insurance Company], there is no further justiciable issue with respect to liability coverage under the Continental policy," and the request by appellants that we declare that "Continental is liable ... for excess coverage for the personal injury actions of Raymond [Miller] and Conforti."
With respect to the standing issue, we observe that respondent did not move to dismiss the appeal. In any event, we believe the issue to be clearly without merit in the particular circumstances of this case. Appellants have a very real interest, a "sufficient stake in the outcome" (Jersey Shore, etc. v. Baum Estate, 84 N.J. 137, 144 (1980)), to warrant their invocation of judicial protection.
*441 As far as the claim of mootness goes, we have decided that the substantive issue is sufficiently important to warrant a determination on the merits. Busik v. Levine, 63 N.J. 351, 364 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Accordingly, we do not reach the mootness question and intimate no view respecting it.
Finally, with respect to the minor issues, appellants' request for a declaration of Continental's liability for excess coverage was not briefed (beyond the conclusionary statement of the brief writer, in connection with his argument on the substantial substantive point, that as a result this liability of Continental exists) and we will not consider it.
The vice of these "minor issues" in this case is that they tend to obscure the important substantive issue presented and the only substantive issue briefed by appellants in this matter: whether Continental Insurance Company (Continental) effectively cancelled its policy insuring an automobile owned by Ricardo Reis. The relevant facts are not in dispute; the sole question presented is one of law. Reduced to its simplest terms it asks whether notice of cancellation by an automobile insurance company for nonpayment of premiums need expressly state the intent to cancel in order to comply with N.J.S.A. 17:29C-8. We conclude that it must, and accordingly reverse the determination below.
Commencing March 9, 1975 Continental insured Reis under Policy No. 0921-72-30 for a period of three months. It appears not to be disputed that this policy was renewed for successive three-month periods, the last of which was effective September 9, 1976 and ran until December 9, 1976.[1] Consistent with its *442 practice, on November 12, 1976 Continental forwarded a notice to Reis identifying the policy and stating,
IT IS AGREED THAT THE POLICY IDENTIFIED ABOVE IS EXTENDED FROM 12/09/76 TO 03/09/77 SUBJECT TO ITS TERMS AND PROVISIONS, PROVIDED PAYMENT OF THE AMOUNT DUE SHOWN ABOVE IS RECEIVED ON OR BEFORE THE DUE DATE.
The premium, stated in the above notice to be due on December 10, 1976, was not paid. On December 15 Continental mailed a notice to the insurance agency responsible for procurement of the policy, with a copy to Reis, advising:
OUR RECORDS INDICATE THAT AS OF 12/10/76, PREMIUM PAYMENT HAD NOT BEEN RECEIVED FROM THIS INSURED. IF PAYMENT IS RECEIVED BY 12/27/76, THE POLICY WILL REMAIN IN FULL FORCE.
Finally, on December 27, 1976, by a form entitled "INSURANCE PREMIUM NOTICE," identical in most respects with the prior two messages, Continental informed the agency (with a copy to Reis) as follows:
YOUR CLIENT'S PAYMENT FOR THE PREMIUM DUE ON HIS POLICY HAS NEVER BEEN RECEIVED. CONSEQUENTLY, THE POLICY HAS LAPSED.
The accident in question occurred on January 22, 1977.
A seminal inquiry revolves around whether this most recent action by Continental constituted nonrenewal or an effort at cancellation. We are satisfied that it was the latter. There is no question but that the most recent policy period for which a premium was paid was said by the company to insure between September 9, 1976 and December 9, 1976, a three-month period. N.J.S.A. 17:29C-6(E) provides "that any policy with a policy period or term of less than 6 months shall for the purpose of this act be considered as if written for a policy period or term of 6 months." The direct and obvious applicability of this statute to the insurance commencing on September 9, 1976, said to last for a period of three months, convinces us that for present purposes we must treat the insurance as though it had been written to expire on March 9, 1977. Further, the process of renewal is described in N.J.S.A. 17:29C-6(E) as "the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or *443 the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term." This is precisely what Continental did here. Accordingly only proper cancellation will serve to deny the insured, Reis, coverage.
The statute in effect at all times with which we are here concerned having to do with cancellation of a policy reads:[2]
17:29C-8. Time for notice
No notice of cancellation of a policy to which section 2 applies shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation, provided, however, that where cancellation is for nonpayment of premium at least 10 days' notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than 15 days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.
This section shall not apply to nonrenewal.
Continental admitted in pretrial discovery that it had not "mail[ed] written notice to Ricardo Reis `stating when not less than ten days thereafter' cancellation of his policy shall be effective." (The statutory language is "10 days' notice of cancellation.") Persuasive arguments can be made in either direction as to whether a notice of cancellation without a date is ineffective or by law becomes effective at the end of the statutory period. We need not wrestle with the problem here because it appears there was in fact no notice of cancellation.
Three notices went out.[3] The first advised of the intention of the company to renew the policy. This contained a proviso conditioning renewal upon receipt of premium payment. This payment was not received but despite that provision the policy was renewed, as attested by the second notice which, after the *444 premium due date, spoke in terms of the policy remaining "in full force" if payment were to be received by the twelfth day thereafter. Additionally, as pointed out above, by virtue of N.J.S.A. 17:29C-6, the policy period effective September 9, 1976 did not expire until March 9, 1977. The third notice did no more than advise the insured that the policy "has lapsed." (Emphasis supplied). Never was the insured told, as the statute requires, that his policy, whether extant by Continental's conduct or by operation of law, would be cancelled, much less was he advised of the date on which that would occur.
Arguably, the second notice implicitly suggested this and did contain a date more than ten days thereafter. But we resist implied cancellation. As is pointed out in Harr v. Allstate Ins. Co., 54 N.J. 287 (1969), insurance policies are complex contracts of adhesion, prepared by the insurer and not subject to negotiation. "[A]verage purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." Id. at 304. We are confident that such "broad measure of protection" includes an insistence that, with respect to statutes which enable insurance companies to shed risks voluntarily undertaken, those companies comply strictly with the statutory requirements. Avoidance by the insurance company of policy obligations is prevented where it is reasonably possible to do so. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475 (1961). We see no reason to dilute this stated policy, derived from legislative fiat, in matters of cancellation. If an insurance company intends to cancel a policy pursuant to the statute, it must say so expressly.
In his letter opinion the trial judge said, "There is no doubt that the notice to Reis clearly stated that the premium must be paid and about [sic; without?] that there would be no coverage." True, but the statute directs they must do more: they must advise that the subsisting policy will be cancelled on a certain date no sooner than ten days thereafter.
In their remaining argument appellants insist "American Fidelity Fire Insurance Company is entitled to attorneys fees for *445 all stages of this action." Their entire argument in this regard is as follows:
Rules 2:11-4(g) and 4:42-9(a)(6) authorize assessment of fees in an action on a liability policy in favor of a successful claimant.
The action has been prosecuted against Continental for both PIP and liability coverage for the benefit of Reis. Continental should be required to pay fees and costs at all stages of these proceedings.
Without regard for the fact that this application is premature (at least in this court, R. 2:11-4) and in any event does not even purport to satisfy the requirements respecting the contents of an application for attorney's fees, id. and R. 4:42-9(b) and (c), an argument employing this economy of words and authority does little to persuade us of the righteousness of the claim. See State v. Hild, 148 N.J. Super. 294 (App.Div. 1977). It is denied.[4]
Reversed and remanded for further proceedings not inconsistent with the foregoing. We do not retain jurisdiction. Appellants shall have taxed costs but not attorney's fees.
NOTES
[1] Appellants have provided copies of the "producer's copy" of each of these successive policies, except that pages 62 and 63 in appellants' appendix are duplications and there is omitted the copy attesting to coverage between June 9, 1975 and September 9, 1975. We attribute this to inadvertence or carelessness, but are, in any event, satisfied that there is no real argument respecting the facts.
[2] An amendment by L. 1980, c. 165, § 1 did nothing more than increase the number of days necessary for notice of cancellation from 10 to 15.
[3] We are disregarding the fact that apparently only the first of these  that actually extending the policy, see above  was directed to the insured, inasmuch as it is apparent that the insured was sent copies of the latter two.
[4] Counsel for Reis as a respondent made the same application in his brief, the only distinction being that he also filed a separate motion (M-4606-80). That motion, accompanied only by a very skimpy affidavit and no brief (R. 2:8-1(a)) was denied, presumably for the reasons set forth in the text above.