NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0329-14T1

JOSEPH DIRENZO,

 Plaintiff-Appellant,

v.

STEVEN KATCHEN and
RAYMOND BROOKS,

 Defendants-Respondents,

and

ANTHONY GALATI, FIRST
INTERSTATE FINANCIAL CORPORATION,
AMERICA'S FIRST ABSTRACT,
INC., PREMIER MORTGAGE
SERVICES, L.L.C., and
CARDINAL FINANCIAL COMPANY,

 Defendants.
_______________________________________________

 Argued May 9, 2017 – Decided August 1, 2017

 Before Judges Messano, Espinosa and Grall.

 On appeal from the Superior Court of New
 Jersey, Law Division, Somerset County, Docket
 No. L-1990-10.

 Patrice R. Ianetti argued the cause for
 appellant.
 Brian J. Levine argued the cause for
 respondent Steven Katchen.

 Brian Boyle argued the cause for respondent
 Raymond Brooks (Maria A. Arena, attorney; Ms.
 Arena and Mr. Boyle, on the brief).

PER CURIAM

 In an effort to stave off the dire financial circumstances

faced by his nephew, Antonio Galati, plaintiff Joseph DiRenzo

agreed to purchase Galati's home (the property) with a mortgage

arranged by defendant Steven Katchen, a licensed mortgage broker.

Defendant Raymond Brooks attended the closing, ostensibly as a

representative of the title insurance agency, America's First

Abstract, Inc. (AFA). Galati was to receive $60,000 from the

closing, make payments on the loan and retain beneficial use of

the property until he could buy it back. Instead, Galati received

far less money, the loan went into default and plaintiff paid

carrying charges on the property until he eventually sold it at a

loss.

 Plaintiff filed suit against Katchen and Brooks, alleging

legal and equitable fraud, violations of the Consumer Fraud Act,

N.J.S.A. 56:8-1 to -204 (the CFA), negligent misrepresentation,

civil conspiracy, breach of fiduciary duty, and professional

negligence against Brooks. In pre-trial motions, Katchen sought

partial summary judgment dismissing the CFA claims against him;

 2 A-0329-14T1
Brooks sought an order striking plaintiff's expert report and

granting summary judgment on the CFA claims against him.

 After construing the CFA's provision prohibiting punitive

damage and counsel fee awards against "a [licensed] real estate

broker, broker-salesperson or salesperson," N.J.S.A. 56:8-19.1,

and concluding Katchen was such a licensed professional, the motion

judge quoted N.J.S.A. 56:8-19.1 in denying Katchen's motion

without prejudice:

 [I]n order for the CFA to not apply to Katchen,
 Katchen has the burden of demonstrating that
 he . . . "[h]ad no actual knowledge of the
 false, misleading or deceptive character of
 the information; and . . . [m]ade a reasonable
 and diligent inquiry to ascertain whether the
 information is of a false, misleading or
 deceptive character."

 The motion judge rejected Brooks' contention that title

producers were "learned professionals" to whom the CFA did not

apply. See, e.g., Plemmons v. Blue Chip Ins. Servs., Inc., 387

N.J. Super. 551, 561-63 (App. Div. 2006) (explaining this exception

to the CFA). He wrote, "[T]itle producers are within the

definition of real estate brokers and thus included in the

exception to the learned professional rule set out in N.J.S.A.

56:8-19.1." The judge also rejected Brooks' argument that he

served only as a notary public at the closing, stating, "Brooks

signed as the settlement agent on a number of the closing documents

 3 A-0329-14T1
. . . . This . . . alone creates issues of material fact regarding

Brooks' role in the sale of the subject property." The judge

denied Brooks' motion without prejudice.

 A bench trial ensued, spanning fourteen days over nine months

before a different Law Division judge. At the conclusion of

plaintiff's case, both defendants moved for involuntary dismissal.

See R. 4:37-2(b). For reasons stated in his oral decision, the

judge entered two orders dismissing plaintiff's complaint as to

Katchen and Brooks.

 Plaintiff appeals, asserting the trial judge applied the

wrong standard in evaluating the sufficiency of the evidence as

to each cause of action.1 We affirm in part, reverse in part,

and remand for further proceedings consistent with this opinion.

 I.

 Before summarizing the evidence at trial, we explain the

principles that inform the proper disposition of a motion for

involuntary judgment and our review of that decision. Rule 4:37-

2(b) provides:

 After having completed the presentation of the
 evidence on all matters other than the matter
 of damages (if that is an issue), the

1
 Plaintiff makes no argument regarding dismissal of his equitable
fraud claim. An issue not briefed is deemed waived on appeal.
N.J. Dept. of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501,
505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015).

 4 A-0329-14T1
 plaintiff shall so announce to the court, and
 thereupon the defendant, without waiving the
 right to offer evidence in the event the
 motion is not granted, may move for a
 dismissal of the action . . . on the ground
 that upon the facts and upon the law the
 plaintiff has shown no right to relief.
 Whether the action is tried with or without a
 jury, such motion shall be denied if the
 evidence, together with the legitimate
 inferences therefrom, could sustain a judgment
 in plaintiff's favor.

"If the court, '"accepting as true all the evidence which supports

the position of the party defending against the motion and

according him the benefit of all inferences which can reasonably

and legitimately be deduced therefrom,"' finds that '"reasonable

minds could differ,"' then '"the motion must be denied."'" ADS

Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 510-11

(2014) (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)

(quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000))).

"An appellate court applies the same standard when it reviews a

trial court's grant or denial of a Rule 4:37-2(b) motion for

involuntary dismissal." Id. at 511 (citing Fox v. Millman, 210

N.J. 401, 428 (2012)).

 "[T]he judicial function here is quite a mechanical one. The

trial court is not concerned with the worth, nature or extent

(beyond a scintilla) of the evidence, but only with its existence,

viewed most favorably to the party opposing the motion." Dolson

 5 A-0329-14T1
v. Anastasia, 55 N.J. 2, 5-6 (1969). The "criteria set forth in

Dolson . . . are particularly applicable to complex transactions

wherein fraud or other inequitable conduct is charged because in

such instances the facts are peculiarly within the possession and

knowledge of the parties charged with the improper conduct."

Zucker v. Silverstein, 134 N.J. Super. 39, 50 (App. Div. 1975).

 "Ordinarily, the dismissal motion should be denied if the

plaintiff's case rests upon the credibility of a witness."

Pressler & Verniero, Current N.J. Court Rules, comment 2.1 on R.

4:37-2 (2017) (citing Ferdinand v. Agric. Ins. Co. of Watertown,

N.Y., 22 N.J. 482, 494 (1956)). However,

 when the trial court's dismissal is dependent
 upon its acceptance of the credibility of a
 key witness . . . , the dismissal is
 sustainable only where the witness's testimony
 "is clear and convincing, not incredible in
 the light of general knowledge and common
 experience, not extraordinary, not
 contradicted in any way by witnesses or
 circumstances, and so plain and complete that
 disbelief of the story could not reasonably
 arise in the rational process of an ordinarily
 intelligent mind . . . ."

 [Cameco, Inc. v. Gedicke, 299 N.J. Super. 203,
 213 (App. Div. 1997) (quoting Ferdinand,
 supra, 22 N.J. at 494), aff'd in part, mod.
 in part, 157 N.J. 504 (1999) (emphasis
 added).]

 The trial judge relied in part upon a case that embodies this

rare exception to Dolson's broad imperative, Caliguire v. City of

 6 A-0329-14T1
Union City, 104 N.J. Super. 210, 212 (App. Div. 1967), aff'd, 53

N.J. 182 (1969). In that case, a child died when he fell from a

rope allegedly suspended from a tree on property owned by the

city. A city police officer testified on the plaintiff's case

that he regularly patrolled the area and had never seen a rope

suspended from the tree, nor had anyone informed him of its

existence. Id. at 214. The judge granted the defendant-city's

motion for involuntary dismissal, and the plaintiff appealed.

Ibid.

 We concluded that the plaintiff failed to prove a necessary

element of the case, i.e., the city had actual knowledge the rope

was on its property. Id. at 216. We rejected plaintiff's

contention that, although the officer's testimony was

uncontroverted, it was not conclusive, because his credibility was

an issue for the jury to decide. Id. at 217. Relying on Ferdinand,

supra, 22 N.J. at 494, we said,

 [w]here, as here, the uncontradicted testimony
 of a witness is unaffected by any conflicting
 inferences to be drawn from it and is not
 improbable, extraordinary or surprising in its
 nature, and no other ground exists for
 hesitating to accept it as the truth, we
 cannot conclude that the trial judge erred in
 doing so. . . . While, as plaintiff argues,
 he was not conclusively bound by [the
 officer's] testimony we believe the trial
 judge could properly accept it as factually
 true -- not because [the officer] was called
 as a witness by the plaintiff, but because it

 7 A-0329-14T1
 was the only testimony offered on the subject
 of defendant's knowledge of the rope swing on
 its property.

 [Id. at 218-19.]

 Lastly, "[i]f the plaintiff's case requires the support of

expert testimony, the failure to adduce it will require dismissal."

Pressler & Verniero, supra, comment 2.3 on R. 4:37-2; see also

Smith v. Keller Ladder Co., 275 N.J. Super. 280, 284-86 (App. Div.

1994) (affirming dismissal when plaintiff's expert's opinion was

sole proof of necessary element and was stricken as a net opinion).

 With these principles in mind, we turn to the evidence at

trial.2

 II.

 Galati purchased the property in 1999, and Katchen was the

loan originator for the mortgage. Thereafter, Galati refinanced

2
 Plaintiff argues the trial judge erroneously dismissed his CFA
claims and his professional negligence claim against Brooks by
ignoring the motion judge's prior decisions, which he contends
were law of the case. This specific argument lacks sufficient
merit to warrant extended discussion in a written opinion. R.
2:11-3(e)(1)(E). "[A] denial of summary judgment is always
interlocutory, and never precludes the entry of judgment for the
moving party later in the case." Hart v. City of Jersey City, 308
N.J. Super. 487, 498 (App. Div. 1998) (citing Johnson v. Cyklop
Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987), certif.
denied, 110 N.J. 196 (1988)); see also Gonzales v. Ideal Tile
Importing Co., Inc., 371 N.J. Super. 349, 356 (App. Div. 2004)
(holding that a denial of summary judgment "decides nothing and
merely reserves issues for future disposition"), aff’d, 184 N.J.
415 (2005), cert. denied, 546 U.S. 1092, 126 S. Ct. 1942, 163
L. Ed. 2d 857 (2006).

 8 A-0329-14T1
the property three times, and on each occasion, Katchen arranged

the mortgage loan. In March 2007, Galati experienced financial

difficulties and sought Katchen's help again. However, Katchen

told Galati his credit was too poor and suggested he find someone

with better credit to help him. Galati called plaintiff, saying

he needed someone to "sign" for him to secure funds from the equity

in his home. Plaintiff agreed to meet Galati, and one hour later,

Galati and Katchen arrived at plaintiff's home.

 Katchen proposed that Galati transfer the house to plaintiff

after plaintiff secured a $460,000 mortgage. Galati would receive

$60,000 in cash from the arrangement, which he would use to pay

the mortgage, taxes, and related expenses for the next year. At

the end of one year, plaintiff would transfer the property back

to Galati or to a corporation he controlled.

 Galati testified that Katchen explained the entire plan to

plaintiff. When plaintiff asked Katchen if he needed an attorney,

Katchen told him no, because it was a "family matter," and Katchen

would take care of it. Plaintiff did not sign a mortgage

application or anything else at the meeting. There was no written

agreement for sale or any written agreement detailing the terms

of plaintiff's and Galati's agreement. After the meeting,

plaintiff and Galati had no contact with Katchen until the closing.

 9 A-0329-14T1
 On April 24, 2007, the mortgagee filed a foreclosure action

against the property; the closing took place the next day at the

property. Karinn Van Pelt, a real estate agent and title producer

who owned AFA, testified AFA was the "settlement agent," whose job

it was to ensure the title and closing documents were correct and

to "sign off" when the closing was funded. According to Van Pelt,

AFA only had one employee, who was not a title producer, so she

hired independent contractors to attend real estate closings.

 She explained that before a closing, the mortgage broker

should explain the HUD-1 statement3 to the borrower, review the

"package" she prepared and answer any questions. For plaintiff's

closing, Van Pelt got the "package" from the lender, First

Interstate Financial, and gave it to Brooks on the day of the

closing.

 Van Pelt hired Brooks, a licensed title producer, and

repeatedly testified he was simply a notary, whose job it was to

witness the closing. However, she also acknowledged there were

numerous places in the closing documents where Brooks signed as

3
 "The HUD-1 Settlement Statement is a document that lists all
charges and credits to the buyer and to the seller in a real estate
settlement, or all the charges in a mortgage refinance."
https://www.consumerfinance.gov/ask-cfpb/what-is-a-hud-1-
settlement-statement-en-178/ (last visited 7/14/17). According
to Van Pelt, the purpose of the HUD-1 statement is "to know who's
paying who."

 10 A-0329-14T1
"settlement agent." Van Pelt stated she used a notary who was

also a licensed title producer because her insurance underwriter

preferred that.

 Plaintiff, Galati, Katchen and Brooks were the only people

present at the closing. Galati recognized Brooks from a prior

refinance closing. Brooks told plaintiff where to sign, but

otherwise provided no explanation of the documents. Plaintiff

admittedly asked no questions because he trusted Brooks and Katchen

as "professional people."

 Plaintiff signed a mortgage application at the closing that

was dated March 27, 2007. Katchen signed the form, indicating he

obtained plaintiff's application by "mail." The application

contained several inaccuracies, including plaintiff's marital

status and the extent of his education. The application listed

the purchase price of the property as $455,000, the loan amount

as $409,500, and cash from the borrower as $45,910.17. Plaintiff

also signed a second loan application dated April 25, 2007, with

the same information.

 Plaintiff signed two different HUD-1 statements at the

closing. Although both listed the sales price as $455,000, there

were slight differences in the mortgage amount, the payoff amount

for Galati's existing mortgage and the amount of cash due from

borrower, i.e., plaintiff. According to plaintiff, no one told

 11 A-0329-14T1
him to bring any money to the closing, and he did not bring any.

In one HUD-1 statement, the "cash to seller" was $70,972.60; in

the other HUD-1, it was $58,716.31. AFA paid Premier Mortgage,

Katchen's company, $11,252.

 Galati did not receive any money at the closing, but about

two weeks later, he received a check for $11,943.11 from AFA.

Galati repeatedly called Katchen to ask where the rest of his

money was, and Katchen told him he would look into the problem,

but Galati never received any more money.

 After the closing, Van Pelt repeatedly called Katchen to

obtain proof of the check received from the borrower, because the

loan could not be funded without the check. Katchen told her to

"relax," and claimed he had the funds. Still, Van Pelt wanted

proof and ultimately contacted Katchen's assistant, Damian Fumero,

who, eventually faxed a copy of a bank check to her. Van Pelt

produced a copy of a check for $40,000, payable to Galati and

drawn on Wachovia Bank.

 Fumero denied ever seeing the Wachovia check or that he had

spoken to Van Pelt about it. An internal security officer for

Wells Fargo, Wachovia's successor in interest, testified that

Wachovia never issued the check, nor was it ever presented to the

bank for payment. Van Pelt acknowledged the loan should not have

 12 A-0329-14T1
closed because of discrepancies on the HUD-1 and because plaintiff

never tendered the necessary funds.

 Plaintiff was initially unaware Galati did not receive

$60,000, and found out one month later when Galati told him that

he had not received the money. Plaintiff loaned Galati more money,

but Galati soon defaulted on payments under the new mortgage and

moved out of the property. Plaintiff started making the payments

and eventually listed the house for sale with Katchen's wife,

realtor Patricia Grish-Katchen. Plaintiff relisted the property

several times thereafter with different agents until it finally

sold in April 2013 for $325,000.

 After an extensive N.J.R.E. 104 hearing, the judge qualified

James Reilly as an expert in real estate transactions "through the

lens of a settlement agent, a licensed title producer, or notary."

Reilly explained that a buyer must bring the amount set forth on

line 303 of the HUD-1 to the closing, and, failing to do so, the

closing must be adjourned. He read from a HUD-1 in evidence,

where Brooks signed under the following statement: "The HUD-1

settlement, which I have prepared, is a true and accurate account

of this transaction. I have caused or will cause the funds to be

disbursed in accordance with this statement." Both HUD-1 forms

in evidence explained it was a "crime to knowingly make false

statements . . . on this . . . form." Reilly acknowledged,

 13 A-0329-14T1
however, that the lender's instructions provided to Brooks did not

require proof of funds. Reilly distinguished a notary's

obligations from that of a settlement agent, and opined that,

although Brooks was AFA's independent contractor, he was acting

as settlement agent because a settlement agent is "any entity

involved in the settlement process."

 III.

 Plaintiff contends the judge consistently misapplied the

standards governing disposition of a Rule 4:37-2(b) motion by

misconstruing our holding in Caliguire. We agree.

 For example, in discussing the fraud claim, the judge cited

inconsistencies in Galati's testimony, and between his and

plaintiff's testimony, and said, "this testimony is as it was in

Calaguire, contradictory, improbable, and surprising, such that

the Court can draw a conflicting inference and has hesitation in

accepting its truth on its face." Noting "multiple versions of

the agreement" between plaintiff and his nephew, the judge

concluded "much of [the testimony] falls within the category as

defined by Caliguire as improbable and certainly surprising."

 However, Caliguire permits a judge to accept "uncontradicted

testimony" from a witness, which if not "improbable, extraordinary

or surprising," may remove the issue of credibility from the jury

and permits the judge to decide the issue based upon that

 14 A-0329-14T1
uncontradicted testimony alone. Caliguire, supra, 104 N.J. Super.

at 218 (emphasis added). When that testimony is "the only

testimony offered" by the plaintiff to prove an essential element

of the case, id. at 219, dismissal is appropriate under Rule 4:37-

2(b).

 In Ferdinand, upon which we relied in Caliguire, the Court

clearly stated that where people of "reason and fairness may

entertain differing views as to the truth of the testimony," such

testimony must go to the jury. Ferdinand, supra, 22 N.J. at 494.

In short, the judge misapplied the holding in Caliguire, which had

no relevance to the evaluation of conflicting testimony offered

by plaintiff in this case.

 We need not cite other instances where the judge made

inappropriate credibility determinations because they are

irrelevant to our consideration of this appeal. That is so

because, as already noted, our standard of review requires us to

examine the evidence ourselves and apply the extremely indulgent

standard set forth in Rule 4:37-2(b). ADS Assocs., supra, 219

N.J. at 511. We do that now with respect to the various causes

of action in plaintiff's complaint.

 A.

 To establish legal fraud, a plaintiff must prove "(1) a

material misrepresentation of a presently existing or past fact;

 15 A-0329-14T1
(2) knowledge or belief by the defendant of its falsity; (3) an

intention that the other person rely on it; (4) reasonable reliance

thereon by the other person; and (5) resulting damages." Banco

Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting

Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). It

was in considering the evidence regarding fraud that the judge's

misunderstanding of Caliguire's holding caused the most mischief.

 Applying the proper standard under Rule 4:37-2(b), the

evidence demonstrated Katchen told plaintiff that Galati would

receive $60,000, which would be sufficient to carry the costs of

the loan on the property for one year. The judge believed these

were only aspirational statements, not misrepresentations of

presently existing facts, because no appraisal had been done on

the property. However, Katchen had secured mortgages for the

property many times in the past, most recently six months earlier,

in October 2006, and presumably knew the balance of the existing

mortgage on the property. Plaintiff was entitled to a reasonable

inference that Katchen represented he could secure a loan for

enough money to pay off the existing mortgage and net $60,000 to

Galanti, all without plaintiff tendering any money at all.

 Moreover, at closing, Katchen knew Galati would not receive

$60,000. Yet, Katchen processed the loan and received his

commission. His actions thereafter implicitly reflect knowledge

 16 A-0329-14T1
of the fraud. "The fact that no affirmative misrepresentation is

made does not bar relief predicated on a claim of fraud. Silence

in the face of an obligation to disclose may be fraud, since the

suppression of truth when it should be disclosed is equivalent to

an expression of a falsehood." Baldasarre v. Butler, 254 N.J.

Super. 502, 521 (App. Div. 1992), aff'd in part, rev'd in part,

132 N.J. 278 (1993). Although plaintiff adduced no proof regarding

the professional standards required of a mortgage broker, there

was evidence that the loan closed only because of

misrepresentations about the funds received from plaintiff. It

is axiomatic that someone in Katchen's position had a duty to

disclose the shortfall rather than process the closing and receive

a fee.

 We also reject the judge's conclusion that no reasonable

person could find plaintiff's reliance upon Katchen's

misrepresentation or silent affirmance was reasonable, because

plaintiff, who had engaged in previous real estate transactions,

signed documents that reflected the need to bring money to the

closing. See Walid v. Yolanda for Irene Couture, Inc., 425 N.J.

Super. 171, 181-82 (App. Div. 2012) (explaining reliance as

prerequisite for fraud claim). However, where one party to an

oral agreement trusts the other party to reduce it to writing, he

may expect it will be drawn accurately in accordance with the oral

 17 A-0329-14T1
understanding between them. Peter W. Kero, Inc. v. Terminal

Constr. Corp., 6 N.J. 361, 369 (1951); see also Bonnco Petrol,

Inc. v. Epstein, 115 N.J. 599, 611 (1989) (when terms of an oral

agreement are not accurately reflected in writing, "it matters

little that they [the plaintiffs] failed to read the agreement

carefully before signing"). We reverse the dismissal of

plaintiff's fraud claim against Katchen.

 As to Brooks, there was no evidence of an affirmative

misrepresentation regarding Galati's receipt of $60,000, or any

evidence that Brooks was aware of the plan. However, plaintiff

contends Brooks deliberately misrepresented the accuracy of the

figures on the HUD-1 form, specifically, the lack of any funds

from plaintiff. We agree.

 Reilly testified that Brooks was the settlement agent and had

a duty to make sure the HUD-1 form was accurate, including making

sure that the amount of money on line 303 of the form, i.e., "cash

from borrower," was correct. Plaintiff, however, did not rely

upon this misrepresentation nor did he suffer any damages from

Brooks' misrepresentation. After all, he knew he brought no money

to the closing, and yet he received title to the property without

paying for it. As a result, plaintiff adduced insufficient proof

of fraud as to Brooks. We affirm the dismissal of the fraud claim

against Brooks.

 18 A-0329-14T1
 In arguing the judge wrongfully dismissed his CFA claims,

plaintiff essentially relies on the rulings made by the motion

judge, which, he argues, demonstrated he had established a prima

facie case of statutory violations. As noted above, these

arguments lack any merit.

 However, much of what we have said about the evidence of

common law fraud applies equally to plaintiff's CFA claims. In

dismissing plaintiff's CFA claim against Katchen, the judge once

again misconstrued Calaguire's holding and made numerous

credibility findings based upon contradictory testimony. As to

Brooks, he determined no reasonable person could conclude he acted

as settlement agent, despite the fact that Brooks signed as such

on numerous documents.

 N.J.S.A. 56:8-19 provides a remedy to "[a]ny person who

suffers any ascertainable loss of moneys or property, real or

personal, as a result of the use or employment by another person

of any method, act, or practice declared unlawful under this act

. . . ." "An ascertainable loss under the CFA is one that is

'quantifiable or measurable,' not 'hypothetical or illusory.'"

D'Agostino v. Maldonado, 216 N.J. 168, 185 (2013) (quoting

Thiedemann v. Mercedes-Benz U.S.A, L.L.C., 183 N.J. 234, 248

(2005)).

 19 A-0329-14T1
 "The CFA requires a plaintiff to prove three elements: '1)

unlawful conduct by defendant; 2) an ascertainable loss by

plaintiff; and 3) a causal relationship between the unlawful

conduct and the ascertainable loss.'" Id. at 184 (quoting Bosland

v. Warnick Dodge, Inc., 197 N.J. 543, 557 (2009)). "There is no

precise formulation for an 'unconscionable' act that satisfies the

statutory standard for an unlawful practice. The statute

establishes a 'broad business ethic' applied 'to balance the

interests of the consumer public and those of the sellers.'" Ibid.

(quoting Kugler v. Romain, 58 N.J. 522, 543-44 (1971)).

 A violation of the CFA can arise in three different settings,

only two of which are important here. Gennari, supra, 148 N.J.

at 605. An affirmative misrepresentation, even if unaccompanied

by knowledge of its falsity or an intention to deceive, is

sufficient. Ibid. (citing Strawn v. Canuso, 140 N.J. 43, 60

(1995)). An omission or failure to disclose a material fact, if

accompanied by knowledge and intent, is also sufficient to violate

the CFA. Ibid. (citing Cox v. Sears Roebuck & Co., 138 N.J. 2,

18 (1994)). Moreover, "causation under the CFA is not the

equivalent of reliance. . . . To establish causation, a consumer

merely needs to demonstrate that he or she suffered an

ascertainable loss 'as a result of' the unlawful practice." Lee

 20 A-0329-14T1
v. Carter-Reed Co. L.L.C., 203 N.J. 496, 522 (2010) (citations

omitted) (quoting N.J.S.A. 56:8-19).

 Here, applying the indulgent standards under Rule 4:37-2(b),

plaintiff proved Katchen made an affirmative misrepresentation

before the closing and omitted material facts at the closing. The

evidence demonstrated a causal connection between the

unconscionable conduct of Katchen and plaintiff's ascertainable

loss. We reverse dismissal of plaintiff's CFA claim against

Katchen.

 As to Brooks, following the completion of testimony, and

apparently at the judge's direction, plaintiff's counsel emailed

defense counsel setting forth the specific causes of action it had

proven as to each defendant. As to Brooks, plaintiff limited his

CFA claim to "knowing omissions." Several weeks later, the parties

appeared before the judge to argue defendants' motions for

involuntary dismissal.4 It is unclear from the argument what

plaintiff's specific CFA claim was against Brooks, however, in his

oral decision, the judge only addressed and rejected plaintiff's

claim that Brooks knowingly omitted telling plaintiff he had to

bring $44,000 to the closing.

4
 The parties evidently provided briefs beforehand to the judge,
but they are not part of the appellate record. R. 2:6-1(a)(2).

 21 A-0329-14T1
 We fail to see any evidence of a "knowing omission" committed

by Brooks. Reilly testified Brooks was not required to see proof

of funds. Plaintiff makes no specific argument to support his CFA

claim beyond conclusory statements without any supporting legal

authority. Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div.

1983). We affirm the dismissal of plaintiff's CFA claim against

Brooks.

 B.

 Negligent misrepresentation is "[a]n incorrect statement,

negligently made and justifiably relied upon," and may be the

"basis for recovery of damages for economic loss or injury

sustained as a consequence of that reliance." H. Rosenblum, Inc.

v. Adler, 93 N.J. 324, 334 (1983). "Negligent misrepresentation

does not require scienter as an element," and therefore, "it is

easier to prove than fraud." Kaufman v. i-Stat Corp., 165 N.J.

94, 110 (2000).

 It was error to dismiss plaintiff's negligent

misrepresentation claim against Katchen because there was evidence

that Katchen misrepresented the consequences of the sale, and

plaintiff relied upon those misrepresentations in agreeing to

close. As to Brooks, plaintiff proved a misstatement on the HUD-

1 form, but, as already noted, he failed to prove any reliance or

 22 A-0329-14T1
damages as a result. We affirm dismissal of the negligent

misrepresentation claim against Brooks.

 C.

 Plaintiff contends the judge erred in dismissing his breach

of fiduciary duty claim against each defendant. However, the

record reflects that plaintiff's counsel advised the judge he was

not pursuing such a claim against Katchen, and, indeed, the judge

never addressed the issue in his decision. There is no indication

that plaintiff ever sought reconsideration of the issue. We

therefore refuse to consider it now for the first time on appeal.

Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973).

 As to Brooks, the judge again focused on inconsistencies

between Van Pelt's testimony, i.e., Brooks was only a notary, and

Reilly's testimony about the role of a settlement agent at closing.

He found plaintiff failed to establish a prima facie case that

Brooks was a settlement agent.

 However, plaintiff was entitled to all favorable testimony

and evidence, as well as all favorable inferences drawn therefrom.

Brooks signed the documents as settlement agent and stated under

penalty that the amounts reflected on the HUD-1 statement were

accurate. Reilly testified Brooks had an obligation not to

consummate the closing if the numbers were not accurate, yet, the

closing was consummated.

 23 A-0329-14T1
 In F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997), the Court

explained:

 The essence of a fiduciary relationship is
 that one party places trust and confidence in
 another who is in a dominant or superior
 position. A fiduciary relationship arises
 between two persons when one person is under
 a duty to act for or give advice for the
 benefit of another on matters within the scope
 of their relationship. The fiduciary's
 obligations to the dependent party include a
 duty of loyalty and a duty to exercise
 reasonable skill and care. Accordingly, the
 fiduciary is liable for harm resulting from a
 breach of the duties imposed by the existence
 of such a relationship.

 [(Citations omitted).]

Here, plaintiff admittedly never met Brooks before the closing

and, while he trusted Brooks because he was a "professional," it

is difficult to conclude they had a special fiduciary relationship,

or that Brooks had a duty to act for plaintiff's benefit. Reilly

never described the relationship in those terms. We affirm

dismissal of plaintiff's claim that Brooks breached a fiduciary

duty.

 D.

 We affirm dismissal of plaintiff's civil conspiracy claim.

"[A] civil conspiracy is 'a combination of two or more persons

acting in concert to commit an unlawful act, or to commit a lawful

act by unlawful means, the principal element of which is an

 24 A-0329-14T1
agreement between the parties to inflict a wrong against or injury

upon another, and an overt act that results in damage.'" Banco

Popular, supra, 184 N.J. at 177 (quoting Morgan v. Union Cty. Bd.

of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993),

certif. denied, 135 N.J. 468 (1994)). The judge concluded there

was insufficient proof of a civil conspiracy, noting it was

necessary to link Brooks to the alleged plan "hatched by Katchen"

that Galati would realize $60,000 from the sale of the property

and plaintiff would have no financial outlay. We agree.

 E.

 Lastly, plaintiff argues the judge should not have dismissed

his professional negligence claim against Brooks. Initially, we

reject Brooks' argument that plaintiff abandoned this claim via

the above-referenced, post-testimonial email. Plaintiff's counsel

clearly stated he was pursuing the "[n]egligence" claim against

Brooks, and the judge considered the issue, ultimately concluding

"Reilly's testimony failed to establish the standard of care of a

closing agent." Plaintiff argues, among other things, that Brooks

had a duty to "conduct the closing in a lawful manner in accordance

with the duties of a [s]ettlement [a]gent." We agree.

 The judge reached his conclusion because Reilly could not

cite specific regulatory provisions regarding the HUD-1 statement

and failed to provide "his industry's definition of a settlement

 25 A-0329-14T1
agent." Clearly, opinions that are nothing more than the expert's

personal views are inadmissible net opinions. Pomerantz Paper

Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011). However,

Reilly's testimony was not a net opinion.

 He clearly set forth the duties of a settlement agent. He

did so based upon his training, experience and education as a

licensed title producer who had served as a settlement agent at

countless closings. See, e.g., Rosenberg v. Tavorath, 352 N.J.

Super. 385, 399-400 (App. Div. 2002) (reversing order of

involuntary dismissal and concluding the plaintiff's expert was

qualified to render opinions based upon his education,

occupational experience and knowledge acquired over years).

Moreover, Reilly cited an obligation imposed on the settlement

agent by the HUD-1 form itself, i.e., that it was "a true and

accurate account of th[e] transaction," and the settlement agent

had "caused or w[ould] cause the funds to be disbursed in

accordance with this statement." Under the indulgent standard

applicable to a Rule 4:37-2(b) motion, plaintiff demonstrated

Brooks was a "settlement agent" who breached this duty by executing

a false HUD-1 form. Clearly, Brooks' actions were necessary to

consummate the closing, the proximate result of which was

plaintiff's ownership of the property without the expected

concomitant disbursement of $60,000 to Galati. Under the

 26 A-0329-14T1
circumstances, it was error to dismiss plaintiff's negligence

claim against Brooks.

 IV.

 In sum, as to Katchen, we affirm the order dismissing

plaintiff's claims for equitable fraud, breach of fiduciary duty

and conspiracy, all of which were properly dismissed, and reverse

the dismissal of plaintiff's claims for legal fraud, violation of

the CFA and negligent misrepresentation.

 As to Brooks, we affirm the order dismissing all plaintiff's

claims, except for negligence. We reverse the order in that

respect.

 We remand the matter to the Law Division for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 27 A-0329-14T1