**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3771-17T1

DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE
OF THE INDYMAC INDX MORTGAGE
TRUST 2007-AR19, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2007-AR19 UNDER THE
POOLING AND SERVICING
AGREEMENT DATED JULY 1, 2007,

     Plaintiff-Respondent,

v.

JEFFREY MERZ,

     Defendant-Appellant,

and

MRS. JEFFREY MERZ, HIS WIFE,
HOUSEHOLD FINANCE CORP. III,
STATE OF NEW JERSEY,
JAMES MONKS, M.D., and N.J.
ENDOVASCULAR THERAPEUTICS,

     Defendants.

_____

Submitted September 11, 2019 – Decided October 8, 2019

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-030746-15.

Seidman & Pincus, LLC, attorneys for appellant (Mitchell B. Seidman, of counsel and on the briefs; Andrew Pincus and Jennifer S. Manheim, on the briefs).

Stradley, Ronon, Stevens & Young, LLP, attorneys for respondent (Dustin P. Mansoor, on the brief).

PER CURIAM

In this residential mortgage foreclosure action, defendant Jeffrey Merz appeals from a March 16, 2018 Chancery Division order, entering a final judgment of foreclosure in favor of plaintiff Deutsche Bank National Trust Company, following the entry of a December 21, 2016 order striking defendant's answer and permitting the matter to proceed as an uncontested matter. We affirm.

We glean these facts from the record. On June 7, 2007, defendant executed a thirty-year note for $629,000 (the subject loan), in favor of IndyMac Bank, F.S.B. (IndyMac). The note was a "fixed/adjustable rate note" with a ten-year "[i]nterest [o]nly [p]eriod." The initial interest rate was 7.750%, and the required monthly payment was $4,062.29. Under the terms of the note, interest rate changes could not exceed two percent from the rate paid "for the preceding

[twelve] months[,]" and the interest rate could never exceed 12.750% for the life of the loan. To secure payment of the note, on the same date, defendant executed a non-purchase money mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for IndyMac, encumbering his property in Harrington Park (the property).[1] The mortgage was recorded on June 22, 2007, in the Bergen County Clerk's Office.

On March 1, 2010, defendant defaulted on the subject loan, and has failed to make any payments since that date. On June 24, 2010, MERS assigned the mortgage to plaintiff, which assignment was recorded on July 8, 2010. Thereafter, on January 17, 2013, plaintiff mailed a compliant Notice of Intention to Foreclose (NOI) to defendant. On September 8, 2015, after defendant failed to cure the default, plaintiff filed a foreclosure complaint. On December 21, 2015, defendant filed a contesting answer, asserting fourteen affirmative defenses and a counterclaim. Among the affirmative defenses, defendant challenged plaintiff's standing, invoked the doctrine of recoupment and set off, and asserted plaintiff was not entitled to relief because the mortgage "was procured through unlawful predatory lending practices." The counterclaim

---

[1] Defendant and his then wife had purchased the property in 1997. Defendant took exclusive title to the property pursuant to a property settlement agreement following their divorce in 2003.

specifically alleged that plaintiff or its predecessor in interest engaged in "unlawful predatory lending practices" by extending the subject loan to defendant "[knowing] [d]efendant was not qualified for the loan," and "us[ing] coercive, manipulative, and other improper tactics in selling[,] . . . processing, approving and extending" the loan to him.

Thereafter, plaintiff moved to strike defendant's answer, asserting that defendant's answer failed to set forth any "genuine issues of fact . . . which validly contest [p]laintiff's right to foreclosure." In support, plaintiff submitted pertinent exhibits and a November 9, 2016 certification prepared by a senior loan analyst for plaintiff's loan servicer. The senior loan analyst certified that based on his personal review of the business records maintained by plaintiff, plaintiff "possesse[d] . . . the original [n]ote and [m]ortgage" prior to the filing of the foreclosure complaint. He also certified that despite receiving an NOI, defendant failed to cure the default.

In opposition, defendant submitted a certification, detailing a chronology of events to support his contention that the mortgage was void "as a result of unconscionable predatory lending practices." According to defendant, "[i]n October 2006," an IndyMac agent or affiliate "convinced" him to refinance his mortgage by "apply[ing] for a no-income, no asset verification" adjustable rate

mortgage loan, whereby "[he] would pay interest only at a fixed rate for [five] years, . . . interest only at an adjustable rate for an additional [five] years, and then principal and interest for the balance of the loan." Defendant stated that, at the time, "[his] credit scores ranged between 650 and 678[,]" and he had $47,000 in unsecured credit card obligations. Additionally, the property, which "[he] believed [was] worth about $675,000," was encumbered by a $401,000 first mortgage and a $78,949 second mortgage, both to IndyMac. Thus, defendant applied for a $555,000 mortgage loan in order to satisfy his outstanding liens and credit card debt, and "obtain $35,000 in cash for necessary [p]roperty renovations and other expenses."

According to defendant, after IndyMac's appraisal valued the property at $810,000, IndyMac approved the loan, which closed on October 21, 2006 (the 2006 loan). On that date, defendant executed an adjustable rate note, with "an initial [interest] rate of 7.25%" and "no prepayment penalty," secured by a mortgage to IndyMac, encumbering the property. Defendant stated that "[l]ess than seven months later, in May 2007," an IndyMac agent "convinced [him] to refinance" again with another "no-income, no asset verification" adjustable rate mortgage loan. According to defendant, "[b]y that time, [he] had already incurred [$43,000 in] new unsecured debt . . . in order to meet [his] living

expenses because the monthly payment of the . . . 2006 loan was not affordable for [him]." At that time, despite IndyMac's appraisal of $790,000, defendant believed the property "was valued at $725,000 at best." Nonetheless, defendant applied for the subject loan in order to satisfy "the existing . . . mortgage loan," and "the newly incurred unsecured debt," as well as obtain "an additional $18,000 in cash," and pay $10,722.53 in "closing costs." However, the subject loan increased his initial interest rate from the 2006 loan "by half a point[,]" and "provided for a pre-payment penalty equal to 2% of the loan balance if the loan was repaid within [three] years."

Defendant also noted that the closing instructions expressed IndyMac's intent and purpose in extending the loan as follows:

> The lender's purpose i[n] making this loan is to obtain a valid first or second mortgage lien suitable for sale in the secondary mortgage market. Unless this purpose is achieved, the [l]ender will sustain a substantial monetary loss. To avoid such loss, you must follow these closing instructions and issue a mortgage policy of title insurance insuring the [l]ender's lien as a valid first or second lien according to the rules and forms promulgated by the state regulatory authority.

Defendant stated that "[a]fter the closing," he "continued to struggle to meet [his] obligations due to the disconnect between [his] income and [his] obligations under the mortgage loan." As a result, "[he] continued to rely on

6

credit cards to meet [his] living expenses, until the growing obligations became insurmountable" and "[he] finally defaulted on the mortgage loan."

Treating plaintiff's motion as a motion for summary judgment, on December 21, 2016, the judge granted the motion. As a result, the judge entered an order striking defendant's answer, and referring the case to the Office of Foreclosure to proceed as an uncontested matter. In his accompanying written statement of reasons, after applying the governing legal principles, the judge rejected defendant's predatory lending defense, concluding defendant failed to "provide[] any evidence to establish a violation of the [Consumer Fraud Act (CFA)] or that IndyMac . . . engaged in any predatory lending practices" under New Jersey common law.

The judge explained that despite conducting "ample discovery,"

> [d]efendant . . . only cites the following in support of his argument [for predatory lending]: (1) that IndyMac['s] . . . appraisal valued the mortgaged address higher than [d]efendant did; (2) that the loan [d]efendant applied for did not require income verification; and (3) that [d]efendant's credit scores eight months before entering the [subject] loan ranged from 650 [to] 678. Defendant also allege[d] that IndyMac . . . generally engaged in predatory lending practices with "Alt-A" loans. However, [d]efendant has been unable to demonstrate what documentation or information IndyMac . . . relied upon in approving the loan.

> Further, [d]efendant has failed to establish that IndyMac . . . or [p]laintiff committed fraud, and has failed to allege that IndyMac . . . or [p]laintiff made any false statement or misrepresentation to [d]efendant at the origination of the loan.

Further, according to the judge, "[d]efendant provide[d] no supporting evidence for his belief that the property was worth" less than what IndyMac's appraisal indicated. The judge continued,

> [w]hat is more, [d]efendant does not allege that the terms of the loan were "unfair" or "predatory," most likely because the loan terms are fair. . . . Defendant also does not direct the [c]ourt to any exploitative terms, hidden fees, or exorbitant closing costs. Accordingly, [d]efendant is unable to demonstrate that IndyMac engaged in predatory lending and unlawful conduct under the CFA.

Acknowledging that "[t]he defenses to foreclosure actions are narrow and limited[,]" the judge concluded that because defendant failed to successfully challenge "the validity of the mortgage, the amount of indebtedness, [or] the right of the mortgagee to foreclose on the mortgaged property[,]" plaintiff was entitled to strike defendant's answer. Thereafter, on March 16, 2018, a final judgment of $1,069,836.29, plus interest, costs, and counsel fees, was entered in plaintiff's favor,[2] and this appeal followed.

---

[2] A writ of execution was also entered on the same date.

On appeal, defendant renews the arguments rejected by the judge, asserting "[t]here [was] substantial direct and circumstantial evidence of predatory lending practices by IndyMac" to "support [his] predatory lending counterclaim and defense" and "defeat [p]laintiff's motion for summary judgment." We disagree.

We review a "grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). That standard is well settled. "Summary judgment is appropriate where the evidence fails to show a genuine issue as to any material fact challenged and the moving party is entitled to judgment as a matter of law." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 299 (App. Div. 2009) (citing R. 4:46-2(c)). In making that determination, we consider the underlying cause of action and the evidentiary standard, and we "view the 'evidential materials . . . in the light most favorable to the non-moving party.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (alteration in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Here, we agree with defendant that "a properly asserted predatory lending claim provides sufficient grounds to deny a mortgagee's request for summary judgment, even insofar as it might simply serve to offset or reduce the amount owed by the mortgagor." See Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 271 (App. Div. 2001). We also acknowledge that a predatory lending claim under the CFA is governed by a six-year statute of limitations, N.J.S.A. 2A:14-1, which expired two years before defendant filed his answer raising the CFA as a defense. However, defendant's CFA claim is preserved under the doctrine of equitable recoupment, which allows a defendant to assert an otherwise stale CFA claim and avoid the statute of limitations, where, as here, the defendant uses the claim "'as a shield by way of counterclaim'" instead of "'as a sword . . . .'" Nester v. O'Donnell, 301 N.J. Super. 198, 208 (App. Div. 1997) (quoting Midlantic Nat'l Bank v. Georgian Ltd., 233 N.J. Super. 621, 625 (Law Div. 1989)).

Nonetheless, we agree with the motion judge that defendant failed to establish that IndyMac engaged in any predatory lending practices to satisfy the CFA or New Jersey common law. The CFA authorizes a suit by "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice

10

declared unlawful under th[e] act." N.J.S.A. 56:8-19. Thus, "[t]o prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

The CFA defines an "unlawful practice" as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2 (emphasis added). An "unconscionable commercial practice" is conduct lacking in "'good faith, honesty in fact and observance of fair dealing.'" Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994) (emphasis added) (quoting Kugler v. Romain, 58 N.J. 522, 544 (1971)). Indeed, predatory lending may constitute an unconscionable commercial practice under the CFA. See Troup, 343 N.J. Super. at 278-80.

Predatory lending is described as

> a mismatch between the needs and capacity of the
> borrower. . . In essence, the loan does not fit the

11

borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capability to repay the loan.

[Nowosleska v. Steele, 400 N.J. Super. 297, 305 (App. Div. 2008) (alteration in original) (quoting Troup, 343 N.J. Super. at 267).]

Additionally, predatory lending is

the practice of making loans containing interest rates, fees or closing costs that are higher than they should be in light of the borrower's credit and net income, or containing other exploitative terms that the borrower does not comprehend. . . . [P]redatory lending is the situation where a mortgage broker or mortgage lender engages in fraudulent, deceptive or sharp practices to induce borrowers (often the elderly or minorities) to enter into bad loans, which would include loans that are overpriced, loans where there is no net economic benefit to the borrower, loans where the borrower cannot afford the payment so the lender is relying on the borrower's equity for payment, and loans with other exploitative terms not understood by the borrower[].

[Id. at 305 n.3 (citations and quotation marks omitted).]

Here, to support his predatory lending defense, defendant relies on general "evidence in the media" that at the time in question, "IndyMac was heavily involved in Alt-A loan origination" to profit "from pooling and securitization." Defendant also points to IndyMac ignoring "obvious indicators that [he] could not afford" the subject loan, the "consecutive loan refinancings in October 2006 and June 2007,"

12

and IndyMac's reliance on "potentially inflated appraisals[.]" Defendant characterizes these indicators as "malfeasance [that] runs afoul of the [CFA.]" However, defendant successfully made the monthly loan payments on the subject loan for three years before defaulting. Additionally, defendant did not exercise his right to unilaterally rescind, see 12 C.F.R. § 226.23(a)(3), and did not assert that the loan's terms were predatory until this litigation.

Further, it is uncontroverted that IndyMac disclosed all loan terms to defendant, including its intent and purpose in extending the loan, and there is no indication in the record that defendant did not understand the terms of the loan when he entered the transaction. In that regard, although the subject loan was an adjustable rate mortgage loan, without income or asset verification, we have previously explained that an adjustable rate mortgage loan is not per se "deceptive . . . or fraudulent . . . to support [a] consumer fraud . . . claim[]." Rosenberg v. Wash. Mut. Bank, FA, 369 N.J. Super. 456, 458 (App. Div. 2004). Indeed, in U.S. Bank Nat. Ass'n v. Curcio, 444 N.J. Super. 94, 114 (App. Div. 2016), we rejected similar assertions of predatory lending noting:

> Defendant also argues that plaintiff engaged in predatory lending by extending a mortgage she could not afford, and tricking her into accepting an adjustable rate mortgage. However, she does not provide evidence nor published New Jersey cases to support her argument. Thus, "[w]e will not consider" defendant's

13

entirely unsupported and "conclusionary statement." In any event, we note defendant signed documents which made clear she was agreeing to an adjustable rate mortgage.

[Ibid. (alteration in original) (quoting Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983)).]

We also reject defendant's reliance on consecutive loan refinancings or "loan flipping" to support his claim. "Loan flipping" is described by the U.S. Department of Housing and Development as the "repeated refinancing of a mortgage loan within a short period of time with little or no benefit to the borrower[,]" and occurs typically "when [th]e borrower is unable to meet scheduled payments, or repeatedly consolidates other unsecured debts into a new, home-secured loan at the urging of a lender." Although the subject loan was issued shortly after the 2006 loan, there is no evidence of "repeated refinancing" or that the subject loan was of "little or no benefit to [defendant.]" On the contrary, the record shows the proceeds from the subject loan were used to pay off prior liens and credit card debts as well as provide defendant with $18,000 in cash at closing. Further, other than defendant's self-serving conclusory statement that "an IndyMac[] agent convinced [him] to refinance" the 2006 loan, there is no evidence that defendant applied for the loan at the urging of IndyMac. "[C]onclusory and self-serving assertions by one of the

14

parties are insufficient to overcome the [summary judgment] motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

Likewise, defendant failed to provide any evidence that IndyMac's appraisal of the property at $810,000 or $790,000 was fabricated. The non-moving party in a summary judgment motion may not satisfy its burden by merely making allegations in its pleading, but must produce sufficient evidence to reasonably support a verdict in its favor. G.D. v. Kenny, 205 N.J. 275, 304 (2011). Viewing "the competent evidential materials . . . in the light most favorable to [defendant]," Brill, 142 N.J. at 540, the record shows no unlawful conduct by IndyMac, and no ascertainable loss by defendant, inasmuch as defendant actually benefited from the subject loan. In sum, defendant simply failed to present sufficient evidence to support an actionable claim for predatory lending.[3]

Other than challenging the validity of the mortgage through his predatory lending claim, defendant did not contest the default, the amount of the indebtedness, or plaintiff's right to foreclose. See Great Falls Bank v. Pardo,

---

[3] Defendant also argues that plaintiff "is not a holder in due course" and is therefore not immune from defendant's "personal defenses," including predatory lending. However, having rejected defendant's predatory lending claims against IndyMac, we need not address this argument.

263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542, 545 (App. Div. 1994) ("The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises."); Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012) (confirming that a plaintiff establishes standing to foreclose by demonstrating "either possession of the note or an assignment of the mortgage that predated the original complaint . . . .") (citing Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 216 (App. Div. 2011)).   Accordingly, having properly rejected defendant's predatory lending defense, we are satisfied that the judge correctly concluded the matter was uncontested, after which final judgment was appropriately entered.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3771-17T1